## Case No. 632.

ATLANTIC & P. TEL. CO. v. CHICAGO, R. I. & P. R. CO.

[6 Biss. 158;[1] 6 Chi. Leg. News, 358.]

Circuit Court, N. D. Illinois. July, 1874.

RIGHTS OF TELEGRAPH COMPANY ON RAILROAD RIGHT OF WAY—CONSTITUTIONAL LAW.

1. Neither the acts of congress declaring railroads to be post-routes, nor the act of July 24, 1866, providing that telegraph companies may construct their lines over post-roads, authorize a telegraph company to establish its lines over the right of way of a railroad company without making compensation therefor according to law.

2. It is beyond the power of congress to authorize a telegraph company to construct its line over private property without making compensation.

In equity. Bill for an injunction, [by the Atlantic & Pacific Telegraph Company against the Chicago, Rock Island & Pacific Railroad Company,] setting forth that the defendant would not permit the entrance of complainant's engineers and workmen upon its right of way, for the purpose of establishing thereon a telegraph line according to its charter, and asking that defendant, its agents, etc., might be restrained from interfering with the construction of such line. [Bill dismissed.]

Dent & Black, for complainant.
Williams & Thompson, for defendant.

DRUMMOND, Circuit Judge. The only controversy here is as to so much of defendant's railroad as lies within this state. The plaintiff claims to be a corporation organized under the laws of New York for the purpose of constructing a telegraph line between the cities of New York and San Francisco; and that, in order to carry out that purpose, it is necessary to construct such line upon the right of way of defendant, between Chicago and Omaha, including that part of defendant's road lying within this state.

The authority to do this is claimed to exist under various acts of congress, some of which declare all railroads in the United States to be post-routes. By these acts I understand nothing more is meant than that the mails can be transported over railroads. as over ordinary public highways, with all those securities and safeguards thrown around the transit of the mails by various

congressional enactments. It does not necessarily follow that because railroads are thus declared post-routes,. [Act Cong. 1872; Rev. St. § 3964,] the United States can, therefore, without the consent of the railroad companies, and without compensation, transport the mails over them. An act of congress of July 24, 1866, [14 Stat. 221; Rev. St. § 5263,] provides that any telegraph company then organized, or which should thereafter be organized, under the laws of any state, should have the right to construct, maintain, and operate lines of telegraph through and over any portion of the public domain of the United States, and over and along any of the military or post-roads of the United States, which had been or might thereafter be declared such by acts of congress. There can be no doubt of the plenary authority of congress over the public lands or military roads of the United States. It is also competent for congress, as it has frequently done, to make grants of public lands to railroads, upon such conditions as it may choose to annex thereto.

The main controversy in this case turns upon the true construction of this act of congress. The bill avers that the defendant has a right of way over which its railroad is constructed. There is nothing to show that this right of way was granted through the public lands by act of congress; on the contrary, the fair inference is, that the defendant acquired it, either by direct purchase from the owners of the land, or by condemnation of the land for the uses of the railroad in accordance with the laws of the state. In either case the railroad would own the property for its own special purposes, having paid for it either by express contract with the owners, or in accordance with the method provided by law. It is true that a railroad has certain public uses, and is, for certain purposes, subject to the control of the state; and in consequence of these public uses the law authorizes the condemnation of private property; but still, when the property has thus been acquired, it becomes private property, notwithstanding the railroad has public uses; that is to say, the property can be used for the benefit of the shareholders of the company. The right of way can be so used, just as much as the road-bed itself, the ties, the rails, the locomotives or the cars; they are all to be used for the benefit of the shareholders, although such uses may be of a public character, and the public may have a certain limited control over them.

The right to construct a telegraph line implies the possession. control, and use of real property, and, in this case, of the possession, control and use of a portion of the right of way of the defendant. The question here is, whether congress intended that in such a case as is now before the court, any telegraph company could, without compensation to the railroad company, exercise these rights

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

of possession and ownership. I think that such cannot be considered the true construction of this act of congress of 1866. The act provided that telegraph companies might have the right to take and use from the public lands of the United States stone, timber and other materials for its posts, piers and stations, in the construction, maintenance and operation of lines of telegraph. There could be no objection to such a grant, as applicable to the public lands of the United States, but there seem to be insuperable objections to such a construction of the act as would authorize the taking and using by telegraph lines of land owned by railroad companies, and of which they seem to have the exclusive control for their own purposes. Such a construction will not be placed upon the act unless its language is inconsistent with any other meaning. And I do not think the true construction of it is, that it intended to authorize any telegraph company to work on the roadway of a railroad, or upon a post-road of a railroad of which it, and not the public, was the owner.

The rights of a railroad over its roadway are different from those which belong to the public at large in regard to the ordinary highways and roads of the country. Over the latter any person can travel; there is an absolute right of user in the public. In the case of public turnpikes and bridges, this right sometimes exists subject to the claim of the proprietors to exact a certain compensation for the privilege of passing over them, but the right to pass is absolute, subject to the payment of the requisite toll. Such rights do not exist on the part of the public in railroads, or in the right of way of railroads.

It could not be claimed that after a railroad company had purchased its land, constructed its road-bed, laid down its ties and iron, and placed upon the road its locomotives and cars, an act of the legislature of a state, or an act of congress, could authorize any other railroad company to pass its cars or locomotives over such railroad without compensation and without permission, unless, indeed, such right was reserved in the charter, or the grant was made subject to the same. The railroad itself, alone, has the right to pass its own cars and engines over its roadway, and to use it for the profit of its shareholders.

The right to construct a telegraph line would imply the right to construct another railroad, or to add indefinitely to the number of telegraph lines that might be placed over the right of way. The right of the telegraph company to construct its line over the right of way of the defendant, is a right inconsistent, in many respects, with that absolute right which the defendant possesses over its own road-bed and right of way. For example: the railroad has a right to take gravel and dirt throughout the whole extent of its right of way, or to use that right of

2FED.CAS—12

way for the purpose of laying down additional tracks or side-tracks. But the right to construct a telegraph line thereon necessarily interferes with the absolute right of the railroad to its right of way. That is a right which cannot be taken without compensation. It is a right of property existing in the railroad company, which no person or other company can take from it without its consent, or without paying for it.

In view of these considerations, it is, I think, clear that this act of congress did not intend to confer on the plaintiff any such right as is contended for. And, granting that such was the intention, it is beyond the authority of congress to deprive the defendant of its rights of property without providing compensation, because the construction of the telegraph line involves necessarily the actual taking of the property. I am of opinion that plaintiff's claim is not maintainable in point of law; and that it has no right to establish a telegraph line upon defendant's right of way without making compensation therefor in accordance with law.

It is urged that the state statute authorizing the condemnation of private property for the use of a telegraph line only refers to companies existing under the laws of the state, and is not applicable to this company, a corporation created by the law of New York. If this be so, it furnishes no reason why the plaintiff should take the property of any corporation in this state without paying for it. It is one of those cases, omitted in the law, but because of that omission the plaintiff is not clothed with any additional rights. The motion for an injunction is overruled, and the bill dismissed.