JACOB W. PIERCE & another *vs.* CHARLES H. DREW & others.

Norfolk.    January 23. — October 20, 1883.

A corporation organized under the St. of 1874, *c.* 165, for the transmission of intelligence by electricity, may avail itself of the powers granted by the Pub. Sts. *c.* 109, to "every company incorporated for the transmission of intelligence by electricity."

The transmission of intelligence by electricity is a business of a public character; and the Legislature may grant to a telegraph company the exercise of the right of eminent domain.

No compensation is provided by the Pub. Sts. *c.* 109, §§ 4, 12, to the owner of the fee of a highway for the use of the same by a telegraph company.

An additional servitude is not imposed by the appropriation of a public highway, under the Pub. Sts. *c.* 109, for the use of a line of electric telegraph, by the erection of poles and wires above the surface of the ground; and the statute is constitutional, although it makes no provision for compensation to the owner of the fee in the highway. W. ALLEN & C. ALLEN, JJ., dissenting.

BILL IN EQUITY against the selectmen of Brookline and the American Rapid Telegraph Company of Massachusetts, to restrain the selectmen from granting to the telegraph company a location for its posts and wires in Brookline. The defendants demurred to the bill for want of equity. At the hearing, before *Endicott*, J., a decree was entered sustaining the demurrer and dismissing the bill; and the plaintiffs appealed to the full court. The allegations of the bill appear in the opinion.

*A. D. Chandler*, for the plaintiffs.

*F. Morison*, for the defendants.

DEVENS, J.   The facts admitted by the demurrer may be thus stated: The plaintiffs own land on a certain street or public highway in Brookline; they also own a fee in the half of the street which is next to their abutting land.

The defendants are the selectmen of Brookline, and, on the application of the American Rapid Telegraph Company, a corporation organized under the St. of 1874, *c.* 165,* (Pub. Sts. *c.* 106, § 14,) for the transmission of intelligence by electricity, are about to grant to that company, under the Pub. Sts. *c.* 109, a location along said highway for their posts, wires, &c.   The bill seeks to restrain the defendants, upon the ground that the last-named statute is unconstitutional.

The Pub. Sts. *c.* 109, may be briefly summarized so far as applicable to the inquiry before us.   By § 1, "every company incorporated for the transmission of intelligence by electricity" possesses the powers and is subject to the duties prescribed in the chapter.   By § 2, the lines of telegraphic communication are to be so placed as not to incommode the public use of the highways or public ways.   By § 3, the municipal authorities shall give the company a writing specifying where the posts, &c. may be located, and the location of posts, height of wires, &c. may be altered at any time by their direction.   By § 4, the "owner of land near to or adjoining a highway" may recover damages if injured thereby.   By § 12, any injury to persons or property by the posts, wires, &c. is to render the company responsible in damages.   By § 15, no easement or prescriptive rights are to be acquired by the erection and maintenance of the posts, &c.   By §§ 8–11, provisions are also made for the limit of the debts, the liability of the officers, and the duties of the company; and penalties are imposed for neglecting them.

That it was the intent of the statute to grant to those corporations, formed under the general incorporation laws, for the purpose of transmitting intelligence by electricity, the right to

---

* This statute authorizes any number of persons, not less than three, to form a corporation "for the purpose of carrying on any lawful business," excepting certain kinds of business, not material to be stated.

construct lines of telegraph upon and along highways and public roads upon the locations assigned them by the officers of the municipality wherein such ways are situate, cannot be doubted. The use of the words "every company" permit no other interpretation. Nor are we able to conceive why, if this authority might be given to corporations specially chartered, it may not equally be given to those organized under the general law.

If this use of property already appropriated to certain public uses is to be deemed of itself an exercise of the right of eminent domain, the determination of the Legislature that the purpose for which it now directs it to be taken is a public use, is not necessarily conclusive; but, if the use be public, it is conclusive that the necessity exists which requires it to be taken. *Talbot* v. *Hudson*, 16 Gray, 417. While in some cases there may be difficulty in deciding whether an appropriation of property is for a public or private use, such difficulty does not seem to exist in the present case. The transmission of intelligence by electricity is a business of public character, to be exercised under public control, in the same manner as transportation of goods or passengers by railroads. The St. of 1849, *c.* 93, of which, with additions, the Pub. Sts. *c.* 109 is a reënactment, recognized its public nature; and in *Young* v. *Yarmouth*, 9 Gray, 386, which was an action for injuries sustained by a traveller on the highway by reason of the telegraph poles erected there under the location granted by the selectmen by authority of the St. of 1849, the town was held not liable because the poles were lawfully within the limits of the highway, and thus not such an obstruction or defect as to render it responsible. See also *Commonwealth* v. *Boston*, 97 Mass. 555; *Bay State Brick Co.* v. *Foster*, 115 Mass. 431. The public nature of this business has been recognized by the legislation of Congress, the decisions of the United States courts, and of many of the States of the Union. So far as known to us, it has not been held otherwise anywhere. U. S. Sts. of July 1, 1862; March 3, 1863; July 2, 1864; July 24, 1866. *Pensacola Telegraph* v. *Western Union Telegraph*, 96 U. S. 1.

No right is given these companies to use the highways at their own pleasure, or to compel in all cases, as the plaintiff suggests, locations therein to be given them by the municipal

authorities. The second section of the statute is to be construed with the third section, and shows an intention that a legally constituted board shall determine not only where, but whether, there can be a location which shall not incommode the ordinary public ways, with full power to revise its own doings, and to correct any errors which the practical working of the arrangements may reveal. *Young* v. *Yarmouth, ubi supra.*

But as, even if the Legislature has the right to authorize the erection of telegraph poles along a highway, as a public use thereof, appropriate safeguards must be provided for any rights of property belonging to individual owners which may be taken or invaded, there remain these inquiries for our consideration : first, whether the statute does provide any compensation to the owner of the fee for this new use of the highway; second, whether he is entitled to such compensation; third, whether the owner of property near to, or abutting upon, the highway, is entitled to any compensation therefor other than such as the act provides.

The fourth section provides for damages which may be sustained by owners of "land near to or adjoining a highway or road along which lines are constructed by the company." It is limited to these, and cannot be extended to those who are the owners of the fee in the highway or road itself. Nor does the twelfth section, as the defendants contend, make any provision for them. This simply enacts that, "when an injury is done to a person or to property by the posts, wires, or other apparatus of a telegraphic line, the company shall be responsible in damages to the party injured." But the concluding clause of the section, by which it is provided that "the city or town shall not, by reason of anything contained in this chapter or done thereunder, be discharged from its liability, but all damages and costs recovered against a city or town on account of such injury shall be reimbursed by the company owning the posts, wires, or other apparatus," indicates clearly that the liability of the company provided for under this section is for injuries occasioned by defects or obstructions in the way which its structures may cause. This section was not in the St. of 1849, *c.* 93; its first clause was added to the legislation on this subject by the St. of 1851, *c.* 247, § 2, and the remaining clause was subsequently added by the St. of 1859, *c.* 260, §§ 1, 2, it may fairly

be presumed in view of the decision in *Young* v. *Yarmouth, ubi supra,* made in 1857.

As the chapter does not, in our opinion, provide for damages to the owner of the fee in the highway by reason of the erection of the telegraphic posts and apparatus, it is to be determined whether such a use of the highway creates a separate and additional burden, requiring an independent assessment of damages, for which the owner of the land was not compensated when the highway was laid out, and thus whether the omission of the act to provide for this compensation renders it unconstitutional.

It is to be observed that, for more than thirty years, the right to appropriate highways to this public use, without any compensation to the owners of the fee therein, has been asserted; that the statutes in regard to it have more than once been expounded by this court, without any apparent doubt of their validity; and that, up to the present time, no suggestion has ever been made that the rights of such owners were in any way invaded. If the argument that these owners are entitled to compensation be correct, the estates of thousands have been wrongfully used while they were either ignorant of their rights or submissive to injustice; and in the mean time costly telegraphic structures have been erected, and the whole business of the State has accommodated itself to this system of the transmission of intelligence. After so long a practical construction by the Legislature and the courts, and after so widely extended an acquiescence by parties whose estates or interests therein are directly affected, it would require a clear case to justify us in setting aside such a statute as unconstitutional, even if it be true, as it certainly is, that no usage for any course of years, nor any number of legislative or judicial decisions, will sanction a violation of the fundamental law, clearly expressed or necessarily understood. *Packard* v. *Richardson,* 17 Mass. 122, 144. *Commonwealth* v. *Parker,* 2 Pick. 549, 557. *Holmes* v. *Hunt,* 122 Mass. 505. No right to take the private property of the owner of the fee in the highway is conferred by this act; all that is given is the right to use land, by permission of the municipal authorities, the whole beneficial use of which had been previously taken from the owner and appropriated to the public. It is a temporary privilege only which is conferred; no right is

acquired as against the owner of the fee by its enjoyment, nor is any legal right acquired to the continued enjoyment of the privilege, or any presumption of a grant raised thereby. Pub. Sts. *c.* 109, § 15. The discontinuance of a highway would annul any permit granted under the statute, and no incumbrance would remain upon the land.

In *Chase* v. *Sutton Manuf. Co.* 4 Cush. 152, 167, it is said by. Chief Justice Shaw, " that where, under the authority of the Legislature, in virtue of the sovereign power of eminent domain, private property has been taken for a public use, and a full compensation for a perpetual easement in land has been paid to the owner therefor, and afterwards the land is appropriated to a public use of a like kind, as where a turnpike has by law been converted into a common highway, no new claim for compensation can be sustained by the owner of the land over which it passes." The case itself goes further than the illustration used by the chief justice. It related to a claim made by an owner in fee of land which had been taken by a canal company by statutory authority, for the purpose of a navigable waterway, which company had been permitted by statute to sell its property to a railway company ; but, although the two modes of transportation were entirely different, the validity of the act was sustained, and the claim of the landowner for further compensation disallowed.

" It is well settled," says Mr. Justice Gray, in *Boston* v. *Richardson,* 13 Allen, 146, 160, " that when land, once duly appropriated to a public use which requires the occupation of its whole surface, is applied by authority of the Legislature to another similar public use, no new claim for compensation, unless expressly provided for, can be sustained by the owner of the fee."

When land has been taken or granted for highways, it is so taken or granted for the passing and repassing of travellers thereon, whether on foot or horseback, or with carriages and teams for the transportation and conveyance of passengers and property, and for the transmission of intelligence between the points connected thereby. As every such grant has for its object the procurement of an easement for the public, the incidental powers granted must be so construed as most effectually to

secure to the public the full enjoyment of such easement. *Commonwealth* v. *Temple*, 14 Gray, 69, 77.

It has never been doubted that, by authority of the Legislature, highways might be used for gas or water pipes, intended for the convenience of the citizens, although the gas or water was conducted thereunder by companies formed for the purpose; or for sewers, whose object was not merely the incidental one of cleansing the streets, but also the drainage of private estates, the rights of which to enter therein were subject to public regulations. *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75. *Attorney General* v. *Metropolitan Railroad*, 125 Mass. 515, 517. *Boston* v. *Richardson, ubi supra.*

Nor can we perceive that these are to be treated as incidental uses, as suggested by the plaintiff, because the pipes are conducted under the surface of the travelled way, rather than above it. The rights of the owner of the fee must be the same in either case, and the use of the land under the way for gas-pipes or sewers would effectually prevent his own use of it for cellarage or similar purposes.

When the land was taken for a highway, that which was taken was not merely the privilege of travelling over it in the then known vehicles, or of using it in the then known methods, for either the conveyance of property or transmission of intelligence. Although the horse railroad was deemed a new invention, it was held that a portion of the road might be set aside for it, and the rights of other travellers, to some extent, limited by those privileges necessary for its use. *Commonwealth* v. *Temple, ubi supra. Attorney General* v. *Metropolitan Railroad, ubi supra.* The discovery of the telegraph developed a new and valuable mode of communicating intelligence. Its use is certainly similar to, if not identical with, that public use of transmitting information for which the highway was originally taken, even if the means adopted are quite different from the post-boy or the mail-coach. It is a newly discovered method of exercising the old public easement, and all appropriate methods must have been deemed to have been paid for when the road was laid out. Under the clause to regulate commerce among the States, conferred on Congress by the Constitution of the United States, although telegraphic communication was unknown when

it was adopted, it has been held that it is the right of Congress to prevent the obstruction of telegraphic communication by hostile State legislation, as it has become an indispensable means of intercommunication. *Pensacola Telegraph* v. *Western Union Telegraph, ubi supra.*

No question arises as to any interference with the old methods of communication, as the statute we are considering, by § 8, guards carefully against this by providing that the telegraphic structures are not to be permitted to incommode the public use of highways or public roads. We are therefore of opinion that the use of a portion of a highway for the public use of companies organized under the laws of the State for the transmission of intelligence by electricity, and subject to the supervision of the local municipal authorities, which has been permitted by the Legislature, is a public use similar to that for which the highway was originally taken, or to which it was originally devoted, and that the owner of the fee is entitled to no further compensation.

There remains the inquiry, whether there is any objection to the statute because it does not provide a sufficient remedy for the owners of property near to or adjoining the way, who may be incidentally injured by the structures which the telegraph companies may have been permitted to erect along the line of the highway and within its limits. Such remedy is given by § 4 as the Legislature deemed sufficient. We should not be willing to believe that the landowner thus injured would be without remedy, if the company failed to pay the damages lawfully assessed under this section, while it still endeavored to maintain its structures; but the only compensation to which such owner is entitled is that which the Legislature deems just, when it permits the erection of these structures. The Legislature may provide for compensation to the adjoining owners, but without such provision there can be no legal claim to it, as the use of the highway is a lawful one. *Attorney General* v. *Metropolitan Railroad, ubi supra.*

The clause in the Declaration of Rights which provides that, "whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor," is confined in its

application to property actually taken and appropriated by the government. No construction can be given to it which can extend the benefit of it to the case of one who suffers an indirect or consequential damage or expense by means of the rightful use of property already belonging to the public. *Callender* v. *Marsh,* 1 Pick. 418, 430.

The majority of the court is therefore satisfied that the demurrer to this bill was properly sustained, and the entry will be, *Decree affirmed.*

C. ALLEN, J. A minority of the court, consisting of Mr. Justice William Allen and myself, are unable to agree with the majority of the court upon the principal question in this case, which is this: When the public has acquired an easement in land for a highway, by taking it under the right of eminent domain, by prescription, by dedication, or by grant, is an additional servitude to be deemed as imposed by appropriating the highway, under legislative authority, for the use of a line of electric telegraph, by the erection of poles and wires above the surface of the ground, so that the owner of an abutting estate and of the soil to the centre of the highway is entitled to further compensation therefor? The corresponding questions are necessarily involved, whether, when land is taken for a highway by the right of eminent domain, it is to be considered as an element of the damages sustained by the owner, and to be paid by the city or town, that the land may be used, not merely for a highway, but also for a telegraph line; and whether, in case of a dedication or grant of land for a highway, with or without the payment of a consideration, the right of establishing a telegraph line along the highway, under the authority of general or special statutes, is also included by implication.

If such owner is in law entitled to further compensation, it is plain that the statute fails to meet the constitutional requirement, inasmuch as no adequate provision for such compensation is made. A mere right of action at law is not sufficient. *Connecticut River Railroad* v. *County Commissioners,* 127 Mass. 50.

It has been held in this Commonwealth and elsewhere, though without entire uniformity of decision, that the establishment of a street railway does not entitle the owner of the land to further

compensation. *Attorney General* v. *Metropolitan Railroad*, 125 Mass. 515. Recognizing this decision as founded on just principles, the question remains, whether the same rule applies to other uses, and with what limitations, if any.

The great weight of opinion thus far expressed by courts is that street railways, with cars propelled by horse power, are not to be regarded as imposing a new servitude which will entitle the owner of the fee of the highway to additional compensation, but that steam railroads are to be so regarded. It is considered that the latter use is so far different in its nature, that the law ought to take notice that it could not have been within the contemplation of the parties that the laying out of an ordinary highway should also include such a mode of travelling. While it is always recognized that the proper and contemplated use of the highway is not to be deemed limited to such vehicles as are in use at the time, it is considered to be too great an extension of the easement acquired by the public to hold that it embraces its use for a steam railway. At this point the line has been drawn by a great weight of judicial decision. See *Williams* v. *New York Central Railroad*, 16 N. Y. 97; *Wager* v. *Troy Union Railroad*, 25 N. Y. 526, 535; *Jersey City & Bergen Railroad* v. *Jersey City & Hoboken Horse Railroad*, 5 C. E. Green, 61; *Imlay* v. *Union Branch Railroad*, 26 Conn. 249, 255; *Grand Rapids & Indiana Railroad* v. *Heisel*, 38 Mich. 62; *Sherman* v. *Milwaukee, Lake Shore & Western Railroad*, 40 Wis. 645; *Kucheman* v. *Chicago, Clinton & Dubuque Railway*, 46 Iowa, 366; *Kaiser* v. *St. Paul, Stillwater & Taylor's Falls Railroad*, 22 Minn. 149; *Southern Pacific Railroad* v. *Reed*, 41 Cal. 256; Cooley Const. Lim. 546, 550; 2 Dill. Mun. Corp. §§ 722, 725.

The use of a highway for the purpose of communicating information by electricity, by means of posts and wires erected along its course, may, in a certain sense, be said to be a use for a purpose similar to that for which highways are established; namely, the increase of communication between persons at different points. But this is a somewhat remote analogy, and the more direct purpose of establishing highways is to enable persons and teams to pass more easily from one place to another. The analogy between a steam railway and conveyance by ordinary teams is much more direct.

The multiplication of telegraph and telephone posts and wires in thickly-settled places within the past few years makes the question at issue one of great importance. There can be no doubt that in many instances an actual injury is done to the remaining or abutting land along a highway or street by the erection of such posts and wires; and the extent to which this may be carried in the future cannot easily be foreseen. When a telegraph line consisted of only a single row of small posts, with a few wires, the matter was of less importance. But common observation shows that now the posts are large and numerous, fitted with cross-beams adapted for layer after layer of almost countless wires; and the establishment of the different kinds of electrical lines involves to some extent a destruction of trees along the highways or streets, an occupation of the ground, a filling of the air, an interference with access to or escape from buildings, an increased difficulty in putting out fires, an obstruction of the view, a presentation of unsightly objects to the eye, and a creation of unpleasant noises in the wind. The actual injury thus done to adjoining property may certainly be quite serious; and if, when land is taken or granted for a highway, it is understood that such use may also be made of it, there can be no doubt that in many instances a very substantial increase of compensation would justly be granted to the owner; because, in assessing damages when land is taken for a highway, it is not merely a question what the land actually taken is worth, or what will be the extent of the injury from the deprivation of its use, but the owner is also entitled to compensation for the incidental injury to his remaining land, which is to be estimated with reference to the use for which the land taken from him is to be appropriated, and such damages are to be allowed to him as will fairly compensate him in view of the purposes of the appropriation. *Walker* v. *Old Colony & Newport Railway*, 103 Mass. 10, 14. *Johnson* v. *Boston*, 130 Mass. 452, 454.

Heretofore, the consequential injury to the remaining land of the owner, arising from the possibility of a future use of the highway for telegraph and telephone wires, has never, so far as we have been informed, been considered as a proper element of damages. No case is cited or known where it has been held, or

even contended by counsel, that damages should be included for such possible use.

If the right exists to establish electrical lines with many wires, without further compensation, the owner is entitled to be paid at the outset for all such rights which are acquired against him, on the assumption that they will be exercised to the full. No one can tell in advance how extensive a use will actually be made; but if it is an incident to laying out a highway that lines of telegraph or telephone may be authorized, the owner of the land certainly has no control over the number of posts and wires that may be used, and the right is not subject to any limit except the discretion of other persons than himself. In fixing his compensation, it must therefore be borne in mind that he has no right whatever to limit the use which may be made of the highway for these purposes. The result will follow, that when his land is taken for a highway he will be entitled to receive, and the public will be compelled to pay, damages, one element of which is uncertain. It may happen that no such use will be made of the highway. It may be the case that the authorities who lay out the way, and the city or town which has to pay the expenses of laying it out and keeping it in repair, do not wish to take or pay for the right to have telegraph lines established on it. They may not think such a line in that place necessary or desirable. Nevertheless, if it is incident to laying out a highway that a telegraph line may thereafter be established upon it, by the sanction of a future board of municipal officers, this right must of necessity be paid for at the outset, unless the owner of the land will have a subsequent claim for additional damages; otherwise his property is taken from him without compensation.

It is going quite too far to hold that in law it must be deemed to have been within the contemplation of the parties, at the time of the laying out of the highway, that it might be used for such new and additional purposes. They are in their nature essentially distinct from the ordinary use of a highway by travellers. It is not desirable to impose this new burden upon the laying out of highways. If the public convenience and necessity require a new highway, but do not require a line of telegraph over it, the public authorities ought to be able to take such an

easement as will subserve the public requirement, without being subjected to the necessity of paying for a right which is not needed nor desired. , The use of a highway for telegraphic purposes is not naturally included in the original design, nor naturally incidental to its use for travel. Highways can be and are conveniently used without telegraphs or telephones. The latter can be established without the use of the highway. It may be convenient in many instances to use the highway for electrical lines. Whenever this proves to be the case, there is no hardship in requiring those who wish to establish such lines to pay for the privilege such damages, if any, as may be caused to the owners of property by such use. In many instances, no doubt, there would be no damages. But in cases where actual damage is thus caused, there is no good reason why it should not be paid for by those who will derive the benefit. It is more just and reasonable that such payments should be made, as for an additional use or servitude, than that it should be included at the outset, when it is not known whether such use will be required or not.

There is another reason for holding that the right to establish electrical lines is not included in the laying out of a highway. When land is taken for a highway, the payment of damages is to be made by the city or town within which it lies. But a city or town has no legal right to appropriate money for the establishment of a line of telegraph or telephone for the general public use. A direct vote of a town to subscribe for shares in a company, or to contribute money in aid of such establishment, would clearly be illegal and void, as not falling within the classes of objects for which municipal expenditures may be made. If, therefore, the owner of the land is entitled to be paid for the right to establish lines of telegraph or telephone along the highway, in the future, as an incident to the use of the land for the highway, and if the city or town is to pay for the damages caused by the laying out of the highway, including all incidental damages to the remaining land, it follows that the city or town is thus made to contribute money, possibly against its will, for an illegal purpose. By construction of law, it will also be held to have paid money in the past for expenses which it had no actual intention and no legal right to incur. And the

electrical companies will be declared entitled to reap the bene-
fits accruing from such payment, for their own advantage.   The
Legislature has never intended to require or to allow towns and
cities to pay for privileges to be enjoyed by electrical compa-
nies, which may be organized under the general laws.   It is at
least doubtful if it has the constitutional right to do so.   It
would not be "wholesome and reasonable" legislation, within
the meaning of the Constitution, to grant to a commercial cor-
poration, established under general laws for purposes of profit,
the right to obtain, without payment, a valuable privilege, for
which a city or town has been compelled, against its will,
to pay.

An argument has been drawn from the judicial sanction
which has been given to the use of streets for drains and sew-
ers, and for gas and water pipes.   But there is a palpable dis-
tinction between such uses and that for the establishment of a
telegraph line.   It may be said, in a general way, that, when a
highway is laid out, the whole beneficial use of the soil is tem-
porarily taken from the owner and appropriated to the public
use; and ordinarily the laying of underground pipes, in such a
manner as to cause no injury to the adjoining land, does not
deprive the owner of the fee of any use which he could other-
wise have made of the soil.   Ordinarily, therefore, he cannot be
deemed to suffer any legal injury from the laying of under-
ground pipes.   A different question, however, might by possi-
bility arise, if such pipes interfered with underground operations
which the owner might carry on, notwithstanding the existence
of the highway.   Then, again, sewers and drains are built more
directly by public officers, and usually are of direct benefit to
the abutting estates, as well as to the streets themselves.   The
advantage to abutting owners is so apparent, that, under our
statutes, they may be assessed for the expenses of construction.
Gas-pipes also are likely to be of direct service in furtherance
of the purposes for which streets are laid out, aiding public
travel, and benefiting the abutting lots.   There is a general
recognition that all these uses are directly subservient to the
purposes for which highways are established; and, by statute,
towns are authorized or required to lay water-pipes, erect water-
ing troughs and fountains, set out and maintain shade trees.

erect guide-posts, and erect and maintain street lamps. Pub. Sts. *c.* 27, §§ 37, 50 ; *c.* 53, §§ 1–4 ; *c.* 54, § 9. But the erection of telegraph lines along a highway is of no direct and peculiar benefit to travellers upon the highway, to the highway itself, or to abutting estates ; and, as has been seen, such lines do or may interfere materially with the beneficial use and enjoyment which the owner of the soil might otherwise have of his estate.

The fact that the statute provides that no permanent easement shall be acquired by a telegraph company is not material. While the line exists, the injury to the owner is continuous ; and he is deprived, without his consent, of the rightful use of his property for a period which, though indefinite and liable to be determined, may yet be perpetual, and which he himself is powerless to bring to an end.

The authorities which hold that using a highway for a steam railroad imposes an additional servitude, for which the owner of the fee is entitled to additional compensation, go farther than is necessary to support the view above taken. The case of *Attorney General* v. *Metropolitan Railroad*, 125 Mass. 515, related only to horse railroads, and leaves it an open question in this State as to steam railways. The case of *Callender* v. *Marsh*, 1 Pick. 418, 431, as to damage caused by changing the grade of the street, has always been recognized as a hard case, and an intimation was given at the time that the Legislature might well interfere by general or special statute for the relief of parties so injured. The doctrine of that case should not be extended. In *Young* v. *Yarmouth*, 9 Gray, 386, the telegraph line was established, so far as appears, by the landowner's consent, and no question involving his rights arose or was considered.

As to elevated railroads, it was held by a majority of the justices of the New York Court of Appeals, that an abutting owner, even if he does not own the fee of any part of the street, has such a property as to be entitled to additional compensation. *Story* v. *New York Elevated Railroad*, 90 N. Y. 122. The case would be much stronger if he owned the fee. In the Supreme Court of New York, and in the United States Circuit Court for the Northern District of Illinois, and in the Supreme Court of Illinois, it has been held that the use of a highway

for a telegraph line will entitle such owner to additional compen-
sation. *Dusenbury* v. *Mutual Telegraph*, 11 Abb. New Cas.
440. *Atlantic & Pacific Telegraph* v. *Chicago, Rock Island &
Pacific Railroad*, 6 Biss. 158. *Board of Trade Telegraph* v.
*Barnett*, 107 Ill. 507.

For these reasons, we are of the opinion that the demurrer
should be overruled.