Woodbury, J.
This is an action which comes into this court upon or by appeal from the court of common pleas.
There are three other cases upon the docket which have been submitted with this case, and which are conceded to involve the same questions that are involved in this case, and that the decision of this case shall determine the other three cases as well as this one.
This case was brought in the court of common pleas to enjoin the defendants from constructing their telephone line along and upon the highway in front of the premises of the plaintiff in this action, which are described in his petition. At the time of the commencement of the action, the telephone line was not constructed, although the defendants were engaged in and about to construct a line along in the highway in front of the plaintiff’s farm. A temporary injunction was allowed by the judge of the court of common pleas, and a motion filed by the defendants to dissolve that injunction. Upon a hearing of that motion, the court of common pleas dissolved the injunction, and an appeal was taken to this court from the interlocutory order dissolving that injunction, and ten days were given by the court of common pleas in which the plaintiff was allowed to perfect that appeal, and in the meantime, the original injunction which had been allowed, *260 was allowed to remain. The appeal, however, was not perfected within the ten days allowed by the court below, and not being perfected, the defendants went on and built and completed their telephone line as contemplated by the defendants, and as it is alleged in plaintiff’s petition, would be done unless enjoined by the court.
A motion was made in circuit court, after the telephone-line had been completed by the defendants, to amend the petition ; but it was held by this court that an amendment could not be allowed to the original petition, for the case was still pending in the court of common pleas; so the plaintiff went back to the court of common pleas and got leave to amend his petition, and there and then alleged that since the commencement of this action the defendants had gone forward and built and completed their line of telephone along on the highway and upon the premises, as alleged, of the plaintiff, and in front of the farm of the plaintiff.
A further relief was prayed for in the amended petition, to-wit: that an order might be issued requiring the defendants to remove the telephone wires and poles so erected, and that the plaintiff might recover damages which he alleges he has sustained by reason of the wrongful erection o'f the poles and stretching of wires by the telephone company along, upon, and over the premises of the plaintiff as alleged.
The plaintiff also alleges in his petition, that he is the owner of the fee of this highway along in front of his premises to the centre of the highway, and that this line is constructed upon his said land within the boundaries set forth in the plaintiff’s petition.
The defendants deny, or say they have no information upon this question of title by the plaintiff in the highway, and therefore deny the same; but they admit in their answer that for twenty-five years and more there has been a public highway along and in front of the premises of the plaintiff in this action and that they propose to, and finally admit that they have constructed upon that highway their telephone lines, in pursuance of the law.' Evidence has been introduced bearing upon this question, and there is no controversy in this case but the defendants have built and constructed their telephone line *261 along and upon the highway in front of plaintiff’s premises, and we have no doubt from the evidence, and from the way and manner that this case has been tried and treated, that the plaintiff in the action holds and owns the fee in the highway to the centre thereof; that this is a mere country or county road in which the public have but a mere easement, while the title in fee. remains in the plaintiff — but that may not make any difference in the final result of the case.
The questions which are involved in this case are very important indeed. We have given it a great deal of consideration. We have examined every authority which we could find bearing upon the questions which are involved, and have 'finally come to a conclusion. The statute of the state, chapter 4, commencing with section 3454, provides that “a magnetic telegraph company heretofore or hereafter created, may construct telegraph lines from point to point along and upon any public road by the erection of the necessary fixtures, including posts, piers and abutments necessary for the wires; but the same shall not incommode the public in the use of such road.”
Section 3456 provides that “ any such company may' enter upon any land, whether held by an individual or a corporation, and whether acquired by purchase or by appropriation, or in virtue of any provision in its charter, for the purpose of making preliminary examinations and surveys, with the view to the location and erection of lines of magnetic telegraph, and may appropriate so much thereof as may be deemed necessary for the erection and maintenance of its telegraph poles, piers, abutments, wires and other necessary fixtures, and for stations, and the right-of-way over such lands and adjacent lands sufficient to enable it to construct and repair its lines.” The 'next provision, or section, provides that “ no such conapany shall, without the consent of the owner thereof in writing, enter any building or edifice, or use or appropriate any part thereof, or erect any telegraph pole, pier or abutment, in any yard or in any enclosure within which an edifice is situate, nor in any cases not provided for in section three thousand four hundred and sixty-one, erect any telegraph pole, pier, abutment, wires or other fix *262 tures so near to any edifice as to occasion injury thereto, or risk of injury in case such pole, pier or abutment be overthrown, nor injure or destroy any fruit or ornamental tree.”
The next two sections are provisions providing for appropriation by telegraph companies of the right to construct their telegraph lines upon the railroads of the state, with a limitation providing as to where they may thus appropriate the right to construct, to-wit: within the limit of five feet of the outside line, excepting in the cases therein specified. The limitation contained in section 8457 is an exception to cases not provided for in section 3461; that section is a provision for the construction of telegraph lines-within municipal corporations, upon any public street, alley or public grounds in any village, etc.
Section 3471 provides that the provisions of this chapter shall apply also to any company organized to construct any line or lines of telephone; and every such company shall have the same powers and be subject to the same restrictions as herein prescribed for magnetic telegraph companies.
It is insisted upon the part of the defendants that under these provisions of the statutes telegraph and telephone companies have the right and power to construct their telegraph lines along and upon the highways in this state, whether the adjoining owner shall be the owner of the fee subject to the easement of the public thereon, or whether the fee should be in the public; and that the adjoining owner has no right to complain; that no private property of his is thereby interfered with or is taken, and that no new servitude is cast either upon the fee or upon any rights which the adjoining property owner may hold in the highway— while on the other hand, it is insisted on the part of the plaintiff, that the erection and maintenance of the telephone or telegraph line upon such highway is an additional burden upon the fee, and interferes with the rights of the property-owner therein recognized by the constitution of the state of Ohio and by the decisions of the supreme court of this state, and that they cannot be taken from him without appropriation; and therefore it is that this question is very important indeed to determine what are the rights of the public in the *263 highway, and what are the rights of the adjoining owners, whether the fee be in the public or in the adjoining owners. Certain rights of the adjoining land-holder are not controverted in this case, to-wit: that the adjoining land-owner has all rights in the highway which shall not interfere with the public rights; he is to use the highway in any way or manner which shall not interfere with the public use; he has the right to the herbage growing along and upon the sides of the highway; he has the right to erect thereon his fences; he has the right to erect thereon his hedges; he has the right to dig in the sides of the highway if it in no way interferes with the public use. While on the other hand, the public have the right to devote the use of the highway to any purpose not inconsistent with the rights of the owner and rights of the public therein, or not inconsistent with objects, purposes and intent of the original appropriation.
There are numerous decisions bearing upon the question as to the uses to which the public may devote the highway; for the purposes of ordinary travel there never could have been any question, for they were the purposes for which the land was originally dedicated or appropriated for a highway; and in cities it is well settled that the public may construct sewers in the highwaju and may lay water-mains and gas-pipes therein, and there is no conflict, so far as we are able to find, in the authorities. It has been held in this state and in Massachusetts, and in several other states, that the public may on its own account, plank or macadamize a highway; or that the public may authorize other persons or corporations to plank or macadamize a highway and to take toll thereon, and that such user — it remaining still a highway and devoted to public use — does not cast upon it a new burden for which the adjoining owner should be entitled to compensation; that it is not such a change in the user as that the adjoining property-owner has the right to complain.
Questions have arisen in regard to street railways, as to whether they were an additional burden, and upon this question there is considerable conflict in the authorities in this state. The question came before the supreme court, in the 14th Ohio St., the decision being written by Judge Ranney, *264 and it was held, while the inference to be drawn from the decisions is that if the building of a street railway should inflict no material injury upon the adjoining lot-owner, that the public had the right to authorize the construction of a street railway; but in that case, the court below having found that a street railway was built upon the side of the street; that it obstructed the right of egress and ingress of the plaintiff to and from his premises; that it placed the street in such condition that it interfered with his use of the highway along and in front of his premises in going to and from his premises, and in hitching horses upon that side of the street, it was held that his private interest in the highway was interfered with in such way-and manner as that the street railway could not construct their road along and upon the highway in the manner contemplated without compensation being first made. The court had found below that the plaintiff in that action would be more injured by the construction of the street railway along and upon the side of the street than he would be by the construction of it in the centre of the street. But the court further found, that taking into consideration the interests of the parties, both of the plaintiff and of the defendant company, and of the public, all interests would be as well subserved up.on the side of the street as in the centre of the street; yet, the' court held, notwithstanding, that the property of the plaintiff was interfered with in such way and manner that it could not be taken without appropriation; and in that case, under the order of the supreme court, the company was enjoined from the construction of their street railway as contemplated without first acquiring the right either by contract or appropriation. In the state of Massachusetts the same ruling has been held as in Ohio, both in regard to street railways and planks. In New York state there is a conflict in the decisions of its courts which would seem could hardly be harmonized; there is a leading case, Kerr v. The People, in the 27th N. Y. Reports, that holds where the fee of the highway or street is in the public, *the public may authorize a company to construct its street railways along and upon the highway, arid the adjoining lot-owners have no such rights in *265 terfered with as they have the right to complain, and the theory of the case is, that the adjoining lot-owner has no tangible, no visible interest interfered with which could be appropriated.
There is another class of cases, and the rule seems to be as well settled in one as the other: The leading case in the 39th N. Y. State Reports, commencing, I think, on page 504, holds that where the fee of the highway or street is in the adjoining owner, the public have no right or authority to authorize the construction of a street railway along and upon such street against the objection of the owner, and that the company cannot construct in such case its street railway along and upon the highway without first appropriating the right. There were two decisions of that character made by the court of appeals of the state of New York, and there were two decisions upon the other hand, holding that where the fee is in the public that then a street railroad may be authorized, and the adjoining owner has no right to complain. Now, these cases came before the supreme court of appeals, in the 90th N. Y. Reports, in what is known as the Elevated Railway cases; in that case the opinion of the majority of the court proceeds upon the ground that the adjoining lot-owner, Story, did not own the fee of the street, but had simply an easement therein, and that 'the fee of the street was in the public; but the court there held by a majority opinion, that the erection of the elevated street railway along and upon that street — Front street, I think it is called — in front of Story’s premises, was an interference with his rights in the street, and they held further, and the foundation of that opinion is, that Story as an adjoining lot-owner and property-owner upon that street had an easement in the street, which was appurtenant to the land or lot, 'which formed “ an integral part of the estate ” in it, and constituted property within the meaning of the constitution which could not be taken without compensation, and that the lot-owner had the right to have the street kept open, and light and air furnished across the open way; that the elevated railway being built fifteen feet above the street by abutments built in the edge of the pavement and put up some fifteen feet high, and then stringers placed across from abutment to abut *266 ment, and a street railway built upon the top of that, the court held that that was an obstruction both to the air and to the light, and also an obstruction to a free, open highway, and that, therefore, the Elevated Railway Company had no right or power to build this elevated railway without first appropriating this property interest, which is recognized by the court of appeals, of Story in the street, and therefore they enjoined the continuance of the elevated railway until such time as the company should procure, either by contract or appropriation, the right from the adjoining land-owners. This is the position of the authorities so far as those questions are concerned. There are authorities in all of those cases that hold that the public has the right to authorize the construction of a street railway upon a highway or street, placing it upon the ground that it is but an improved method of travel upon the highway which was originally contemplated by the parties, by the public and by the adjoining lot-owners or landowners, whether the property should be obtained by approprition or by dedication.
Questions of the same character have come before the Supreme Court of the United States, and a full discussion of them will be found, by Justice Bradley, in his opinion in the case of Barney v. Keokuk, 94. U. S., 324; but the question there involved, to build a railroad in a street in the stat.e of Iowa, is based almost entirely upon the holdings of the supreme court of Iowa. In that case it appears that the fee or title of the highways is vested in the public almost universally in Iowa, and it was so in that case; yet, the supreme court of that state hold that no permanent erections could be authorized by the city or by the public upon such highway, while the uses of it for railway purposes, and especially for street railways, is recognized. There is still another class of cases upon which there is still more conflict, and that is the right of the public to devote or authorize the devotion of the public highways to steam railways. In the city of New York there are two or three decisions made hy the supreme court of that state, which go to the extent of holding that the public may authorize the construction of a steam railway upon its streets, and that the adjoining lot-owners in such cases would have no right to *267 complain; that it is but an improved mode of travel; that it is a devotion of it to a public use similar to what it was originally intended, and therefore the parties have no right to complain, and those decisions are based upon the ground that all appropriations by the public of private property for a highway must include the right to any improvements which may be discovered in the future for uses for which the public appropriated the property originally, and that especially the street railway is but such improved mode of user; and the cases which hold that a steam railroad may be authorized, place it on the same ground; but the large weight of authority in this country is that such user and appropriation for a steam railroad is a diversion from its original use and purpose, and is an additional burden upon the highway which could not be authorized; and the same rule would seem to be recognized by the supreme court of Massachusetts in the 136th Massachusetts Reports. With this class of decisions and thus much said in regard to the use to which the public may devote the highway and the manner and way in which they may use them, we come to the question : Is it a change of that user, or is the user which the public have the right to make of the highways'changed or altered by the construction of a telegraph or telephone line upon the highway in the state of Ohio? — and as I have said, it is an important question; it is more important than a person would naturally suppose, taking into consideration the construction of a single line; it has become a question in many of the cities of this country what is to be done with the telegraph and telephone wires, whether companies should be permitted to continue them upon the surface as now constructed, or whether they should be compelled to place them underground; and further, as to what limitations ought to be placed upon the telegraph or telephone companies in regard to their rights of construction in the public highways and upon public grounds. This question ought to be well settled||and understood. Daily, in this state as well as in other states, the public, right of appropriating private property for highways is enforced; daily almost, private individuals are dedicating their private property to the public for highways, and it is a matter of the utmost importance, what *268 rights are given to the public in case of such dedication, or what rights the public acquire in the highway and in the property of the individual when they have appropriated it for a highway. The compensation in case of appropriation, which the party is to receive for his private property, of course is to be measured by the extent and the kind of user which the public may devote his property to and the burdens'which the public may place upon it; if it is one thing, he is entitled to one measure; if it is still more burdensome, he is entitled to another rule of compensation, and it is all important when that is being considered with the view of determining the amount the public are taking from him, and the burdens which they are placing or may place upon his property by virtue of that appropriation, and it is equally important where the individual is dedicating his property to the use of a highway for the public use. In the ease of Street Railway v. Cumminsville, in the 14th Ohio St., Judge Ranney, commencing on page 548, says: “We have already had occasion to say, that it is a grave error to suppose that a land-owner, who has granted, or from whom an easement has been taken for a public highway, while it is held to its original uses, could complain that it was taken from the control of the' public authorities, and placed in the possession of an incorporated company; that it was changed from a dirt road to a plank or turnpike road, or that it was supported by tolls instead of a public tax ; but it is a still graver error to suppose, that such an easement can, at the will of the public, be lawfully appropriated to the uses of any sort of a highway, without furnishing just cause of complaint on his part. So far is this from being true, that it is entirely clear, that such a change as necessarily and wholly excludes the particular uses for which it was acquired, would work an entire extinguishment of the easement; and it is equally clear, that, with the continued enjoyment of these uses, and in furtherance|of the same general purposes, a new use might be authorized, requiring other adaptations, and imposing additional burdensjupon the land, or destroying or impairing the owner’s easementfin the highway, which could not be legally resorted to without a further appropriation and compensation. The reasons for this have" *269 already been adverted to. Such changes and additions are not within the scope and spirit, or fair intendment, of the original grant or appropriation. The man who grants an' easement for a common road, does not consent that the uses incident to such a work may be excluded, and the land burdened with the exclusive occupation of a locomotive railroad, although both are highways, and, each in its own way, facilitates travel and transportation. Such an easement, whether acquired by voluntary grant or appropriation, requires a certain reasonable and customary adaptation of the land, to all the various uses to which such a road is applied. What this will require, and what burdens will be imposed upon the land, may be easily foreseen by him who grants it voluntarily, and easily estimated for him from whom it is taken by appropriation; and whatever it is, with the necessary incidents of maintaining it perpetually, constitutes the public right and interest — all else is private right, and securely guarded from invasion by the constitution of the state. With this public right, the public, through its representatives — the general assembly — may deal without restraint. It may regulate and modify the manner of using it by the public at large, and may, undoubtedly, devote its own interests to the maintenance of new structures, placed in the hands of other agencies, and calculated to advance and enlarge the general purposes for which the highway was originally constructed. But where these new structures, and new modes of travel, devolve additional burdens upon the land, and materially impair the incidental rights of the owner in the highway, they require more than the public has, or can grant, and the deficiency can only be supplied by appropriating the private right, upon the terms of the constitution.”
Now, it will be seen, as I have already read, such an easement, whether acquired by voluntary grant or appropriation, requires a certain reasonable and customary adaptation of the land to all the various uses to which the road is applied. What this will require, and what burden may be imposed upon the land, may be easily foreseen by him who grants it voluntarily, and easily estimated for him from whom it is *270 taken, and whatever it is, constitutes the public right and interest. *
In the case of Pierce v. Drew, cited from the 136th Mass., 75, Allen, Justice, in the dissenting opinion says: “If when land is taken or granted for a highway, it is understood that such use may be made of it (to-wit, using the highway for telegraph and telephone purposes), there can be no doubt that in many instances a very substantial increase of compensation would justly be granted to the owner; because in assessing damages when land is taken for a highway, it is not merely a question what the land is worth, Qr what will be the extent of the injury from the deprivation of its use, but the owner is also entitled to compensation for the incidental injury to his remaining land which is to be estimated with reference to the use for which the land taken from him is to be appropriated, and such damages are to be allowed to him as will fairly compensate him in view of the purposes of the appropriation.”
It will be noticed that Judge Ranney in his opinion places stress upon this proposition, and when we are looking to ascertain what are the rights of the public, we should consider, of course, what the public have taken and paid for, and what was within the contemplation of the parties at the time of the appropriation or of the dedication, whichever it may be.
Then, what may be, done and what may be taken into contemplation in the future in regard to the use of the highway? Of course it is conceded that under the statutes of this state and under the current decisions, the public have no right either themselves, or to authorize anybody else, whether it should be an individual or corporation, to devote the highways or streets of the state to any such use as shall exclude the public from such uses as the property was appropriated for, or dedicated to; and so the statutes in this state make provision that no such user by telegraph or by telephone company shall interfere with the public use; but the statutes of our state are entirely silent upon the question whether such user shall or may in any manner or in any way interfere with the private rights of adjoining land-owners, with the bare exception that they shall not interfere with any fruit *271 or ornamental trees. Beyond that, in the statutes of this state, there is no limitation, and this subject may be a question which should be properly considered as to what the intent of the legislature was in making any of these provisions in the statutes; whether when they were authorizing the use of the highways of this state by telegraph and telephone companies, it was the intention to grant any more than the right —such right as the public might grant in the use of the highways — to such an extent as would not interfere with'the public use thereof, and still at the same time recognizing that such interference or such constructions might interfere with the rights and property interests of the adjoining land-owners, and for which they might receive compensation. Certain it is, it seems to me, that if the legislature, when they were giving to telegraph and telephone companies-the right to construct their lines in the highway, had supposed that the adjoining land or lot-owner was not entitled to any compensation, or that his rights were not interfered with, they would have provided other and further limitations and restrictions upon the way and manner and place of constructing the same, which would have protected such owner in the free and uninterrupted use of the highway in connection with his land ; but in the provisions of this statute there is no limitation excepting such as I have spoken of in regard to where they may put up poles or build their abutments, or place other fixtures of the company; they may do it, so far as the statute is concerned, in front of a man’s house or gate-way or bars upon his premises any place. So far as the statute itself is concerned, unless the third section oi that chapter makes such provision when it gives the right to such companies to make appropriations of private property, such would be the case.
Now, in contemplation of the use to which these streets or highways may be put and the extent of that use, and whether a telegraph or telephone line is an additional burden, it may be said that a single line may amount to but little in the way of an obstruction or in the way of an additional burden upon the real estate of the fee of the land; it would not be appreciable, and yet, a thousand of them stretched along and upon the sides of the highway, might be an entire obstruction and *272 might entirely prevent the adjoining lot-owner from passing to and from the street. As a simple illustration: In coming from the court house the other day in Youngstown, I saw a single pole standing there with 90 telephone wires stretched upon it. Supposing, instead of stretching their 90 wires upon that single pole, they had set along upon the side of that highway 90 sets of poles upon which to stretch a single wire? Is there any limit in the statute to so construct them; are there any limitations in the statute upon the means which may be used by the telegraph or telephone companies to suspend their wires upon the side of the highways and other places, to erect poles and to put up abutments, and how? The way and manner in which they shall be put up, is in no way limited except that they shall not interfere with the rights of the public. The right of individuals is in no way recognized in all this statute, unless in the third section, which provides that the company may appropriate private property. Another view occurs in connection with this: the railroad company appropriates private property for the purpose of building a railway. This statute makes provisions and authorizes telephone and telegraph companies to appropriate from the railroad companies the right to erect and maintain upon the right-of-way of railroad companies within the limitations therein specified and mentioned, either telephone or telegraph lines. Query : Is that a new burden placed upon the right-of-way of the railroad company not contemplated by the original appropriation; was the appropriation made by the railroad company of the private property of individuals for railroad purposes, also for the further purpose, that any company in the state of Ohio might go on and appropriate it from the railroad company in entire disregard of the individual rights of the owners of the property and fee therein, and devote it to a telephone,or telegraph use and purpose? I say, that would be a very serious question indeed. There are one or two decisions, — one in Kansas, holding it could not be done; that it is an additional burden upon the purposes and rights obtained by the railroad company when'it appropriated it for railroad purposes, although it is conceded that the railroad company might have the right to erect telegraph or telephone *273 wires for its own purposes, for the purpose of running and managing its trains; that they have not appropriated in that appropriation the right to give to others that right.
There is still another decision in this state, to be found in 35 Ohio St., upon the question of what is in the contemplation of the parties in the original appropriation. The case will be found on page 171. It is in the case of the Lawrence Railroad Company v. Williams. Judge Gilmore writes the opinion of the court: “ As between the public and the owner of the land upon which the common highway is established, it is settled that the public has a right to improve and use the public highway in the manner and for the purposes contemplated at the time it was established. The right to improve includes the power to grade, bridge, gravel or plank the road in such manner as to make it most convenient and safe for the use oí the public for the purposes of travel and transportation in the customary manner, which is well understood to be by the locomotion of man or beast and by vehicles drawn by animals, without fixed tracks or rails to which such vehicles are confined when in motion. These constitute the easement which the public acquires by appropriating land for a right-of-way for a highway, and these, in legal contemplation, are what the owner is to receive compensation for when his land is appropriated for this purpose. The fee of the land remains in the owner. He is taxed upon it; and when the use or easement in the public ceases, it reverts to .him free of all incumbrance. In the exercise oí the right of eminent domain, the state through the general assembly may delegate to a railroad corporation the power to appropriate a right-of-way for its road along and upon the public highway; but the appropriation for this purpose cannot be constitutionally made without making compensation to the public for the injury thereby caused to its easement in the highway; apd also making compensation to the owner of the private property taken for the use indicated.” Now, in this case, the court undertake to define the use for which the original appropriation was made for a highway; it says: The right to improve includes the power to bridge, gravel or plank the road in such manner as to make it most convenient and safe for the use of the public, *274 which is well understood to be by locomotion of man or beast and by vehicles drawn by animals, without fixed tracks or rails to which such vehicles are confined, when in motion: these constitute the easement which the public acquires by the appropriation of land for the right of highway, and these, in legal contemplation, constitute what the owner is to receive compensation for when his land is appropriated for this purpose. It will be seen that the supreme court of this state, both in the 14th Ohio St., and in the 35th, is looking to what rights the public has in the highways of the state, what is appropriated,-and what the party may receive compensation for and should receive compensation for in making such appropriation. Was it within the contemplation of the parties or the public, at the time this highway here was appropriated or dedicated, whichever it may have been, that this street, or the sides of this street, might be burdened by telegraph or telephone wires; was any such thing in the contemplation of the parties ? If so, the parties had the right to receive compensation — to demand it — but certainly, neither the company nor the public would have the right to place it upon this private property, and they have not the right to place it in the highway unless by appropriation or dedication it has been given to them, and unless it was one of the uses which was within the contemplation of the parties at the time of the appropriation or dedication. I beg to inquire, when was it, in this state, that any such user was within the contemplation or taken into consideration when the public were appropriating private property for highways, or a person was dedicating his property to the public for a highway? Whoever, in such appropriations, took such a matter into consideration ? The streets of this city, the sides of these streets, may be entirely filled with the lines of telegraph and telephone companies and wit.h their poles. Is not that an additional burden upon the original appropriation? Did anybody at the time of the original laying out and appropriation have it in contemplation — -was it in the contemplation of the public or of anybody else, that it might be devoted to such purposes and objects ? If it was, the parties have their compensation for it, and of course they have no *275 right to complain; but as far as most of the streets and highwa}rs in this state are concerned, no such user was^ known at the time of the laying out and appropriation.
It is said this is an improved method for the transmission of intelligence; that under the old way, intelligence was transmitted by mail and by post-boy over the highways, and that this is but an improved method; that therefore, it was within the originally contemplated user, and the public have the right to authorize such use of it; the supreme court of Massachusetts, in the case of Pierce v. Drew, 136 Mass., 75, so hold it, placing their decision upon that ground, by a majority opinion of five to two. The minority of the court dissented from that proposition and insisted that “ It is going quite too far to hold that in law it must be deemed to have been within the contemplation of the parties, at the time of laying out of the highway, that it might be used for such new and additional purposes. They are in their nature essentially distinct from the ordinary use of a highway by travelers. It is not desirable to impose this new burden upon the laying out of highways.”
Upon this question, we have one other decision, made by the supreme court of Illinois, in the case of Board of Trade Tel. Co. v. Barnett, 107 Ill., 507, which takes .the same view as is taken in the dissenting opinion in the case in the 136th Massachusetts. These two cases are the only ones to which our attention has been called, or that we are able to find bearing directly upon the question. There is a case which was decided by the supreme court of Georgia, which is somewhat analogous; but that was an appropriation upon a railroad track, and perhaps does not in all its bearings involve the question which is before the court in this case. There are two decisions made, one by the supreme court of New York and one by the superior court of New York, in both of which eases it is held that the erection of telegraph poles and wires along and upon the side of a street or highway is an additional burden upon the fee, for which the adjoining owner is entitled to compensation, and which cannot be placed upon the land against the consent of the owner, without an appropriation under the constitution of that state; they are courts of con *276 siderable authority, especially the supreme court of that state. There are two decisions made by the court of common pleas in this state; one by Judge Williamson, of Cleveland, holding the same doctrine, and one by a common pleas judge in Cincinnati, which, as I understand, applies only to electric light companies erecting and maintaining their wires. Upon the question where lays the weight of authority we have a divided court in Massachusetts, five to two. We have a decision of the supreme court of Illinois, holding that it cannot be done without compensation, and we have the two decisions in the state of New York; one by the supreme and the other by the superior court of that state, holding that it is an additional burden. We; have read over very carefully the cases and the opinions both of the majority of the court in the case in the 136th Mass., and the opinion of the dissenting judges; and we think that the dissenting opinion in that case gives better grounds and reasons for their opinion than are given by the majority of the court. One of the principal grounds for the dissenting opinion was fully recognized and affirmed by Judge Ranney in the 14th Ohio St., and in the case which I have read from in the 35th Ohio St.; and after a full consideration of it, without taking up more time, we may say, that in our opinion, in Ohio, while the public may authorize the erection of telegraph or telephone poles along and upon the sides of a highway so as not to interfere with the public use; that, at the same time, that does not authorize their construction as against the rights of the adjoining lot or land-owners; that such erections and constructions are an additional burden upon the fee of the land, which must be first appropriated or acquired by contract before they may be taken.
There was some question in regard to the evidence in this case. We admitted evidence tending to show the injury plaintiff had sustained by reason of the construction of these telephone wires along and upon the side of the highway. Witnesses were permitted to testify as to the difference in value between the farm without the telephone wires and structures along and upon the side of the highway, and also with them there. We have further considered that question in this case, and have come to the conclusion, that for the *277 purposes of damages in this case the evidence was not competent, and we exclude it entirely from our consideration in this case. As to what injury this plaintiff has sustained by reason of this erection, as we hold it is put there without right and shall grant an order for its removal, whatever injury is inflicted, is but temporary. The proof in regard to it consists in simply digging the holes and setting up the poles; the proof shows, however, that the poles are set so near the hedge that they interfere with the mowing of the grass along and upon the sides of the highway, and would interfere with the trimming of the hedges of the plaintiff by hand or machinery. But what injury there is, has already been done in the laying out, and the permanent use of it would be none; and so far as the damages in this case, and so far as each of the other cases are concerned, we fix them at one dollar and no more. There is no element here of exemplary damages in the case; these telephone and telegraph wires were erected under a supposed right, and not with any intent to violate the rights of the plaintiff in the action.
There was one question that I intended to allude to, of which I have not spoken. It was insisted in the argument upon the part of the defense, referring to a ruling in the 18th Ohio, of the supreme court, that the plaintiffs in these cases have stood by and seen these telephone and telegraph wires erected, without objection, and knowing that money was being expended for that purpose, and that therefore they cannot now complain by way of injunction; that their only remedy is to proceed under the statute to compel an appropriation. But in this case, the plaintiff did object; he commenced an action to prevent; he sought to enjoin, and his action was still being maintained when these poles and wires were erected and placed along and upon the highway. So it cannot be said that these defendants expended their money in the erection of these wires and poles upon the apparent acquiescence of the plaintiff in their construction, and under these circumstances, no estoppel ought to be urged as against this plaintiff. The testimony of witness for the defense was to the effect that he said to the plaintiff that if he had any particular place where he *278 desired to have the poles placed, they would be placed there. There is no proof and the witness did not undertake to testify that the plaintiff said where they should place the poles; he simply said he did not want them placed where they would injure the trees. So far as the proof is concerned, it shows he was all the time and has been objecting by this law-suit down to the present time.
There is an another question that we have considered, and that is: This company has erected these poles and lines along and upon the sides of this highway; it is a line running from Warren to Painesville; they have done it under a supposed right, and we find that if an order is issued now for the removal of the wires and poles along the premises of the plaintiff, it would of course break up the entire business of the company over its whole line. Under these circumstances, we think we ought not to issue such an order, but that the defendants should have reasonable opportunity to acquire this right to maintain this line along and upon the property of the plaintiff, as well as of the other plaintiffs in this action; and, therefore, time should be given for that purpose, and in this case we think we ought to give a reasonable time for the defendants to acquire this right. There may be a question, and I think fairly there is a question, whether this company, being a foreign corporation, has any rights under the laws of Ohio to appropriate property for its uses. ■ True, in the 22nd Ohio St., it is to be found, commencing on page 412, that the Pennsylvania company had the right ‘to appropriate private property in this state for railroad purposes or uses; but in that case the court find that the charter of that company expressly authorizes them to appropriate private property for railroad purposes, and that the legislature of this state had by an enactment authorized such company — a railroad company, owning a line running in Pennsylvania and Ohio— with such powers to appropriate private property ; so by the statutes of this state and the charter of the company in Pennsylvania, that company in this state had the right to appropriate private property. But we are unable to find in the statutes authority for any foreign telegraph or telephone company to appropriate private property in Ohio; it is, however, *279 not necessary to pass upon this question.in this case. We would put on a time for the taking effect of this order such as would give the company a reasonable time to acquire by purchase or appropriation, if they have that right, the right to maintain their lines along and upon the side of this highway. This same kind of an order was allowed in the case spoken of in the 90 N. Y., in the Elevated Railway cases.
Frank Hutchins, for plaintiff.
Jones & Gilmore, for defendant.
We think that ninety days would be ample and sufficient time, taking into consideration the interests of both parties.
By Frazier, J. (additional) :
We have found that certain matters which were averred in the petition, such as the inj urj* to fruit trees, the injury to shade trees, the injury to the premises and the injury to the ingress and egress — the going in and out on the premises, were in nowise interfered with ; except such only as the placing of the poles in the manner described would naturally make. The evidence is that the line is not at least within forty feet from the building, sixty feet from the entrance to the barn, and thirty feet from the entrance to the house; but we do not find that it interferes with the fruit trees or ornamental trees; in other words— it does not interfere with anything of the character which the statute provides it shall not.