# CHARLESTON.

MAXWELL *v.* CENTRAL DISTRICT & PRINTING TELEGRAPH Co.

Submitted January 28, 1902.     Decided March 8, 1902.

1. PUBLIC STREETS—*Telephone Poles—Counsel's Consent.*
    The erection of telephone poles along the streets of an incorporated city, town or village with the consent of the council thereof is not such taking of private property for public use as will authorize the abutting lot owner to enjoin the prosecution of such work until his damages occasioned thereby are paid or secured to be paid. (p. 125).

2. PUBLIC EASEMENT—*Privilege Merely.*
    Such a privilege is a mere easement carved out of, subservient and appurtenant to, the public easement in such street. (p. 125).

3. PUBLIC IMPROVEMENT—*Destruction of.*
    Before an individual or company may invade and destroy in whole or part for other public purposes a public improvement placed on the street by an abutting lot owner in front of his property under agreement with the council of the city, town or village, specific authority for so doing must first be obtained from such council. (p. 126).

Appeal from Circuit Court, Harrison County.

Bill by W. Brent Maxwell against the Central District and Printing Telegraph Company. Judgment for plaintiff, and defendant appeals.

*Affirmed.*

JOHN BASSEL, for appellant.

DAVIS & DAVIS and M. F. SNIDER, for appellee.

DENT, PRESIDENT:

W. Brent Maxwell, a citizen and resident of the city of Clarksburg and owner and occupier of a lot fronting one hundred and eighty feet on the south side of Pike street along which by agreement with the common council he had constructed a sawed stone pavement, on the 5th day of July, 1901, obtained an injunction from the circuit court of Harrison County enjoining and restraining The Central District and Printing Telegraph Company from erecting or maintaining any telephone pole or poles upon the sidewalk or stone pavement in front of his property or stringing wires thereon, for the reason that the same would be a taking of the fee in the land occupied without just compensation, would create a public nuisance or obstruction in the thoroughfare, specifically marring the beauty of his property as a residence, render it less accessible and irreparably damage it without legal authority so to do.

The plaintiff presented as a part of his bill an ordinance of the city council adopted September 24th, 1890, granting to the defendant "the privilege of constructing, equipping and maintaining lines of poles and wires upon and along the streets and alleys of the town for telegraph and telephone purposes," and claimed the same was void from the fact that it was adopted prior to any legislation authorizing the council to grant such privilege. The act was passed *in* 1891. The plaintiff also presented an order of the county court granting such privilege as to the roads and highways of the county, but as the county court has no control over the streets and alleys of the City of Clarksburg, such order can have no bearing on the determination of this case and must be regarded as unnecessary surplusage.

The defendant appeared and answered the bill, admitting that it was about to erect two telephone poles in front of plaintiff's premises as claimed by virtue of said ordinance of the

council, that for upward of ten years it had telephone lines extending through the thoroughfares of the city, but that "in order to accommodate the public and furnish proper facilities for intercourse by means of telephone lines respondent has been compelled to equip and maintain a more sufficient line than that first erected in said city, and in order to effect this purpose respondent sent its engineers to Clarksburg and had a line laid off and mapped in and through said town, and respondent's engineers found that the line could be better located and made more efficient by changing it or transferring it from the north to the south side of Pike street, which necessarily compelled its location in front of the property of the plaintiff."

Defendant then moved to dissolve the injunction as the bill presented no grounds for equitable interference. The motion was overruled and defendant appeals. The first question presented by the appeal, is as to whether the erection of a telephone line along a public thoroughfare, is such a taking within the meaning of the Constitution of this State as will authorize the reversioner (suposed to be the lot owner) to maintain an injunction until just compensation has been or secured to be paid. The decisions of other states are very conflicting and unsatisfactory on this question. They may be found collated and commented on in the case of *Krueger* v. *Telephone Company*, 106 Wis. 96, 50 L. R. A. 298, 81 N. W. 1041. Many of these decisions have little or no application to the law of this State, as they are mere judicial fictions invented for the purpose of securing to an abutting lot owner damages to his property caused by street improvement or use for other public utilities than travel. A resort to such fictions are not necessary in this State for the reason that the Constitution secures to the abutting lot owner such damages as may be sustained by him because of public improvements of any kind, not by injunction, however, but by action at law, unless the damages are so great as to amount to a virtual taking of his property. *Mason* v. *Harper's Ferry Bridge Co.*, 17 W. Va. 396; *Spencer* v. *Point Pleasant R. R. Co.*, 23 W. Va. 406. In the 4th point of the sylulabus of the latter case, it is held that "If a railroad company with the consent of a town council builds its road through a street of a town the fee of the ground on which the street is located being in the adjoining owners of lots, the railroad company does not take the property of such lot owners, but only an easement from such town council,

a simple right of way so long as the council has an easement in such ground to use it as a street."

In *Watson* v. *Street Railway Co.*, 39 S. E., the same conclusion is reached as to Street Railways. The same law is applicable to telephone lines. The Telephone Company takes nothing by its grant from the town except a simple right of way so long as the council has an easement in the land to use it as a street. While it may obstruct to some extent the public easement out of which it is carved, it in no sense takes anything from the owner of the fee that has not already been taken from him when the land was dedicated to public use. Telephonic communication though maintained by private capital is a great and rapidly increasing public utility. It is an immense saver of time and money and often life. It also relieves the public thoroughfares of much of their burden of travel, far more than the space occupied compares with the residue of the public highways. As its facilities increase its public utility, necessity and cheapness of operation, will also increase until its benefits are appreciated and enjoyed by all. It will prove a great aid in the administration of justice, the prevention of crime and the spread of civilization, as it will bring all mankind into easy speaking distance of each other. Telephone poles are not things of beauty, yet their utility is so great that their ugliness must be endured until human invention has discovered some more tasteful substitute for them. The public can well afford to surrender a reasonable portion of the public easement in its highways to a public utility of such vastly increasing importance. As the owner of the fee in such highways loses nothing thereby he has no grounds of complaint. It puts no additional burden on the fee, but it is a burden alone upon the permanent easement to which it is appurtenant and subservient. It may, however, be a damage to a greater or less extent to the abutting lot owner. For this he has his suit at law unless such damage be equivalent to the actual taking of his lot. No such damage is pretended and the injunction is not predicated thereon.

The only other question worthy of consideration presented by this record is as to whether the plaintiff is entitled to enjoin the erection of such telephone poles as a public nuisance specially damaging his property.

If the defendant was clothed with proper legal authority to erect such poles, although they may be a specific damage to

plaintiff's property and he be entitled to sue therefor, he could not maintain his injunction. For that which is lawful for a person to do cannot be enjoined as a nuisance. On the other hand, if the defendant has failed to show legal authority for its conduct, the plaintiff is entitled to his injunction. *Cook* v. *Totten,* 38 S. E. 491; *McEldowney* v. *Lowther,* 38 S. E. 644. For authority defendant relies solely on the ordinance passed by the council September 24, 1890, as ratified by the act of the Legislature enacted 1891. This act provides: "That when any company desires to erect telephone poles along any street of any incorporated city, town or village, the consent of the council of such city, town or village shall be first obtained." As heretofore shown the ordinance grants the defendant the privilege of "constructing, equipping and maintaining lines of poles and wires upon and along the streets and alleys of the town for telegraph and telephone purposes." This is a general grant without designating the streets or alleys along which such lines were to be erected. The defendant acting thereunder erected its lines throughout the city and has maintained them for ten years. According to the allegations of its answer it now wishes to change the location of its lines and poles, especially in front of plaintiff's property without further consent from the council. The council have the right to control the location of the defendant's poles and lines as the mutual interest of the public and the defendant may demand. But it cannot surrender the control of the streets by a general ordinance to the defendant so as to permit it to locate and relocate its lines from time to time, *ad libitum,* without regard to the interests of the public or private citizens. If the defendant has once located its poles and lines by virtue of the original ordinance under the supervision and direction of the council, it cannot re-locate and change such lines and poles without first having the consent of the council to do so. It is the duty of the council to superintend and preserve as far as possible the rights of all parties in the public thoroughfares of which it is the mere custodian or trustee. And when a person claims the right to invade and destroy in whole or part a public improvement for public use erected by another at private expense by agreement with the council, such person should be armed with explicit authority from the council for so doing and a general privilege to erect telephone poles and lines along such streets granted long years previous, to such improve-

ment, furnishes no such authority. The council authorized the plaintiff to lay an expensive stone pavement along the front of his property for the use of the public at his own expense. While done at his expense it is public property and the council has the right to authorize the defendant to invade such sidewalk and destroy the same in part for the setting of its poles and also to destroy or injure the shade trees along or over the same, yet the defendant may not do so without the consent of the council first obtained. Having the prior consent of the council the defendant may do so, and if the plaintiff is damaged thereby he may have recovery thereof by action at law.

The defendant having failed to show the consent of the council first obtained to invade and injure the plaintiff's authorized improvement, the court committed no error in continuing the injunction until such consent was shown or obtained.

The decree is affirmed. ·

*Affirmed.*