# CHARLESTON.

## J. A. Fox v. City of Hinton *et al.*

Submitted May 13, 1919.    Decided May 20, 1919.

1. MUNICIPAL CORPORATIONS—*Fee of Street—Right of Abutting Owner—·Extent of Easement.*

    In this State, on the acquisition of a public street by a city, the fee of the land remains in the landowner, and the city acquires an easement in the street for travel which includes every kind of travel and communication for the movement or transportation of persons or property which is reasonable and proper. It includes the use of all kinds of vehicles which can be introduced with reasonable regard for the safety and convenience of the public, and every other reasonable means of transportation, transmission and movement beneath the surface of the ground, as well as upon or above it. It embraces the reasonable use of such street for wires of telegraph, telephone and electric light companies, and such other similar arrangements for communication or transportation as future invention may make desirable. (p. 241).

2. SAME—*Easement of Street—Transmission of Electric Current.*

    Such right to the use of its streets, for the purpose of transmitting electric current thereon for the use of the inhabitants, may be granted by a municipal corporation to a public service corporation organized for the purpose, and when this is done such public service corporation will have the same rights in the public streets for such purpose as the city would have had it undertaken the work itself. (p. 241).

Appeal from Circuit Court, Summers County.

Suit for injunction by J. A. Fox against the City of Hinton, Virginia-Western Power Company, and others. Temporary injunction made permanent with mandatory injunction compelling defendant power company to remove its poles, and defendants appeal.

*Reversed, injunction dissolved, bill dismissed.*

*E. C. Eagle, W. T. Ball* and *F. W. King,* for appellants.

*R. F. Dunlap* and *Thos. N. Read,* for appellee.

RITZ, JUDGE:

The defendant, Virginia-Western Power Company, a public service corporation, secured from the defendant City of Hinton a franchise authorizing it to use the streets and alleys of said city for the purpose of constructing thereon and thereover its poles and wires, for the purpose of supplying to said city and its inhabitants electric current for light and power. The plaintiff is the owner of a lot situate at the corner of Ballengee Street and Second Avenue in said city, upon which is located several small buildings fronting on Second Avenue used for various business purposes. The defendant power company, desiring to erect its poles and lines under the franchise granted to it, procured the municipal authorities of the city to go with its representative upon the streets and indicate the location of the poles to be erected for the purpose of supporting the transmission lines. One of these lines was located on Second Avenue and directed to be constructed on the side thereof next to the plaintiff's property, two of the poles being placed in front of said property, one at the corner of Ballengee Street and Second Avenue, and the other toward the rear of plaintiff's lot. It appears that in the City of Hinton that part of the principal business streets of the width of twelve feet, adjacent to the property lines on each side of said streets, is appropriated for the purpose of sidewalks for the use of pedestrians, the part of the street between these twelve-foot spaces being devoted to transportation by vehicles and other like means. On this twelve-foot space devoted to the use of pedestrians it is provided that a walkway eight feet wide should be laid covering the portion thereof adjacent to the property lines, leaving a space four feet wide between said walkway and the street curb. This space of four feet is the part of said street in which electric light, telephone and other poles of like character ordinarily have been erected. The sidewalk in front of the plaintiff's property on Second Avenue is not laid next to his property line, but with the permission of the city he laid the same next to the curb, and reserved the four feet of unpaved space next

to his property line, and devoted the same to his private use for the purpose of making entrances to his premises, and for other private purposes. The reason of this was that when Second Avenue was paved the grade was reduced in front of the plaintiff's property to some extent, and to require the sidewalk to be laid in the part of the street next to his property line would have interfered with the foundations of his buildings and prevented him from having access thereto, unless he lowered them to the new grade. At the end of plaintiff's lot next to Ballengee Street, the sidewalk laid on Second Avenue curves in toward his property line leaving between such sidewalk and the street paving at said corner a small space unoccupied either by the street paving or by the walk. In this unoccupied space the defendant power company was directed to place one of its poles, and another of said poles was located, as above stated, to the rear of plaintiff's lot next to the street curb, but because of the fact that the sidewalk at this point was laid out next to the street curb it was necessary in erecting this pole to cut a hole through the sidewalk. This pole, it is shown, is about fifteen inches in diameter, and being placed inside of the curb, which is about four inches thick, obstructs the street to the extent of about twenty inches on the side next to the paved way. When the defendant power company undertook to erect poles at these points the plaintiff applied for an injunction to restrain it therefrom, alleging that the construction and erection of these poles would obstruct the free and uninterrupted use of the street by the public at these points; that if the same were permitted to be placed in the position indicated it would damage his property by making the access thereto more difficult, and by obstructing the view therefrom, and to some extent the entrance of the light into such premises; and also contending that these poles were erected by digging into the ground some five or six feet, and that the earth so removed was hauled away and appropriated by the defendant power company, and that this amounted to a taking of some of his property, he being the owner of the fee in the street. A temporary injunction was granted restraining the defend-

ant power company from erecting poles, or from putting its cross arms or wires thereon after the same were erected. The same had at that time been erected, so that the injunction only operated to prevent the construction of the transmission lines thereon, but upon the final hearing the court made the temporary injunction permanent, and also awarded a mandatory injunction compelling and requiring said power company to forthwith remove said poles. It is from this final decree that this appeal is prosecuted.

It is admitted by all parties that the street in which these poles were being constructed is one of the public streets of the City of Hinton, and that said city has at least an easement therein for the use of the public for street purposes. The plaintiff, of course, contends that this easement does not include the right to erect electric light lines in said street, and if he is correct in this contention, of course the defendant power company is acting entirely without authority. If the easement held by the city in this street does not include the right to use the same for the purpose of erecting lines thereon for the transmission of electric current thereover, then it could not confer such authority upon the defendant power company by a franchise. But it is equally true that if the easement for street purposes does include the use of the street for the transmission of such electric current, then the franchise granted to the defendant power company authorizes it to make such use thereof. It may be said that in this State, upon the acquisition of a public street, the fee of the land remains in the landowner, and the public acquires an easement in the street for travel. What does this easement include? It embraces every kind of travel and communication for the movement or transportation of persons or property which is reasonable, and further it includes the use of all kinds of vehicles which can be introduced with reasonable regard for the safety and convenience of the public, as well as every reasonable means of transportation, transmission and movement beneath the surface of the ground, as well as upon or above it. And when the easement is acquired by the city it carries with it the right to use the street for street

cars, for wires of telephone, telegraph and electric lighting companies, and for water pipes, gas pipes, sewers, and such other similar arrangements for communication or transportation as future invention may make desirable. *Arbenz* v. *Railroad Co.*, 33 W. Va. 1; *Watson* v. *Railway Co.*, 49 W. Va. 528; *Maxwell* v. *Telegraph Co.*, 51 W. Va. 121; *Lowther* v. *Bridgeman*, 57 W. Va. 306; *Lynch* v. *Town of North View*, 73 W. Va. 609; *People* v. *Eaton* (Mich.) 24 L. R. A. 721, and note; *Frazier* v. *Telephone Co.* (Tenn.), 3 L. R. A. (N. S.) 323, and note; *Hobbs,* v. *Telegraph Co.* (Ala.) 7 L. R. A. (N. S.) 87, and note; *Pierce* v. *Drew*, 136 Mass. 75; *Eustis* v. *Railway Co.*, 183 Mass. 586; *Telephone Co.* v. *Terminal Company*, 182 Mass. 397. And in Third Dillon on Municipal Corporations, § 1211, it is said that while the decisions of the courts are not uniform as to the extent of this easement, some of them making it include much more than others, there is practical unanimity that the easement in such a street in urban communities includes the use thereof for water mains and pipes, sewers, gas mains and electric light poles and wires. There is some divergence about the use thereof by street railways, but the author of the text concludes that there is practically no dissent from the view that the erection of poles and electric wires in such streets is a proper use thereof. In *Arbenz* v. *Railroad Co., supra*, it was held that the construction of a railroad in a public street under municipal authority would not be enjoined, but if such use of the street especially damaged an abutting property owner he would be put to an action at law for damages. And in *Watson* v. *Railway Co.*, 49 W. Va. 528, it was held that an abutting property owner could not enjoin the construction of a street railway in a street in front of his premises, unless it amounted to a practical taking of his property. In *Maxwell* v. *Telegraph Company*, 51 W. Va. 121, it was held that the erection of telephone poles in the streets of an incorporated city, town or village, with the consent of the municipal authorities thereof, was not such an improper use of the streets as would authorize the abutting property owners to enjoin the prosecution of the work; that such a privilege granted by the munic-

ipality was merely an easement carved out of, subservient and appurtenant to, the public easement in such street. And the same holding was made in regard to telephone poles erected along a country road under authority of the proper officers, in the case of *Lowther* v. *Bridgeman,* 57 W. Va. 306. It seems quite clear from these authorities that the construction of such a pole line as is attempted to be erected in this case is an entirely proper use to be made of the street, and that the same is included in the uses to which the public has a right to dedicate the easement it has in it. It does not take anything from the abutting property owner, nor does it take anything from the owner of the fee in the street, who in this case is the abutting owner. As we said in the case of *Maxwell* v. *Telegraph Company, supra,* it is a mere easement carved out of, subservient and appurtenant to, the public easement in such street.

There is great conflict in the authorities as to whether an abutting owner is entitled to recover damages accruing to his property by reason of the erection of such poles and transmission lines as are contemplated here. That question is not presented to us for determination by this record, but if as was held in the cases above cited this use of the street is included in the easement owned by the city, it might well be said that neither it nor anyone acting under its authority could be required to pay anyone therefor.

The contention made that by digging the holes within which these poles are set and placing the poles therein, some of the plaintiff's soil is removed and appropriated, is without merit. The right to erect such poles carries with it the right to use the soil to such depth as is necessary for the purpose, and of course when a pole is placed in the ground it displaces some of the earth.

Whether the plaintiff's premises are as desirable after the erection of these poles as before, we need not inquire. If his light, which he claims is obstructed, is not as good as it was before, this is caused by an entirely proper use of the street abutting upon the property. We may say that it is a little hard for us to understand how a pole fifteen inches in diam-

eter, twelve feet away from the property line, will materially obstruct the light in the plaintiff's buildings, but whether it does or not the plaintiff is bound to know that this was one of the uses to which the city had a right to put its street, and he cannot complain that it has availed itself of this right.

The plaintiff's contentions being entirely without merit, we will reverse the decree of the circuit court of Summers County, dissolve the injunction, and dismiss the bill.

*Reversed, injunction dissolved, bill dismissed.*