# CHARLESTON.

VIOLA CURRY *et als.* v. BUCKHANNON & NORTHERN RAILROAD COMPANY.

Submitted January 18, 1921. Decided January 25, 1921.

1. EMINENT DOMAIN—*Damages Arising from Construction of Railroad for which Owner of Urban Real Estate may Sue Enumerated.*

     The owner of urban real estate may maintain an action against a railroad company to recover damages to such real estate from the construction of its railroad tracks in the street in front of the same, destroying his means of access to his property, and from sparks and cinders cast upon his property

from locomotives used in the operation of the railroad, and for injury to the house upon the property from shaking and jarring the same, as well as for any other direct injury resulting from the operation of such railroad. (p. 550).

2. RULES OF PLEADING AND PRACTICE EXIST ' FOR CONVENIENT ADMINISTRATION OF JUSTICE.

Rules of pleading and practice exist for the convenient administration of justice, and not to effectuate its denial to a party sustaining an injury. (p. 557).

3. EMINENT DOMAIN—*All Owners, Though Their Respective Estates May be Uncertain, may Unite to Recover Entire Damages.*

Where the estates owned by several different parties in real estate are so uncertain and indefinite in their extent and duration, depending upon contingencies which cannot be foreseen or determined with any reasonable degree of exactness, that the owners of such different interests cannot establish with any degree of definiteness the extent of an injury to the particular estate to which they are or may be entitled, and where some of such owners are not even yet determined, but depend upon future contingencies, all of the parties in being having an interest in such property may unite in a suit and recover therein entire damages for a permanent injury inflicted thereon. (p. 554).

Error to Circuit Court, Marion County.

Action by Viola Curry and others against the Buckhannon & Northern Railroad Company. Judgment for defendant, and plaintiffs bring error.

*Reversed and remanded.*

*Harry Shaw* and *Walter R. Haggerty,* for plaintiffs in error.
*Rollo J. Conley* and *Frank C. Haymond,* for defendant in error.

RITZ, PRESIDENT:

Plaintiffs brought this suit to recover damages to their real estate situate in the city of Fairmont resulting from the construction and operation of the defendant's railroad in the street in front of the same. Upon the trial of the case, after the plaintiffs had offered all of their evidence, the court, upon motion of the defendant, directed a verdict in its favor, and

rendered judgment thereon, to review which this writ of error is prosecuted.

The declaration is in three couunts, in each of which it is alleged that the plaintiffs are the owners of a valuable piece of real estate situate on Guffy Street, in the city of Fairmont, and that they own the fee in the said Guffey street to the center thereof, the city being the owner of an easement in said street for the purposes for which public streets are ordinarily used; that the defendant constructed in said Guffey street, in front of the property of the plaintiffs, a large fill or embankment the entire width of said Guffey street, to a height of from five to ten feet, the effect of which was to raise the street that distance above the plaintiff's property and the house constructed thereon with reference to the former grade, and that by reason thereof the plaintiffs' means of access to their property has been practically destroyed, and that its value has been greatly decreased.

The second count contains very much the same averments as the first, except the averment is that the fill extends, not only in front of the plaintiffs' property, but along Guffey street between cross streets, and destroyed Guffey street as a public highway, making access to plaintiffs' property very difficult, if not impossible.

The third count avers, in addition to the matters above referred to, that upon the fill so constructed the defendant laid its railroad tracks and operated thereover trains, from which sparks are thrown exposing the plaintiff's property to danger from fire; that the house has been greatly jarred and shaken by reason of the operation of said trains, and that dust, cinders and smoke have been cast upon the property, from all of which causes it has been very seriously damaged.

A demurrer was interposed to the declaration and to each count. The court sustained the demurrer to the second and third counts, but overruled it as to the first count, and the plaintiffs assign as error the action of the court in sustaining the defendant's demurrer to the second and third counts of their declaration. The first count, to which the demurrer was overruled, and the second count, to which the demurrer was sus-

tained, base the right of recovery, if there is one, upon the injury inflicted upon the plaintiffs' property by raising the street grade in front of it from five to ten feet, making part of the property uninhabitable and destroying the means of access thereto. The second count is more elaborate in detailing the extent of this fill made by the railway company, but the basis for recovery therein contained is the same as in the first count. The third count, in addition to the damages suffered on account of the means of ingress and egress being destroyed, and on account of part of the property being rendered uninhabitable by reason of the changed grade, relies as a ground of recovery upon the fact that cinders, sparks and smoke cast upon the property injured it and rendered it liable to be destroyed by fire, and that the operation of the railroad jars and shakes the house, causing it to be injured in that way. It is a little difficult to see why a demurrer should have been sustained to the second count, and overruled as to the first count, for the basis of recovery in each of them is the same, the cause of action being only stated in a little different form. It is insisted as to the third count that no recovery can be had because of the sparks, cinders and debris thrown upon the property from the operation of the trains, and the defendant cites the cases of *Fisher* v. *Railway Co.,* 102 Va. 363; *Richmond Traction Co.* v. *Murphy,* 98 Va. 104; and *Meyer* v. *City of Richmond,* 172 U. S. 82, in support of its contention that the plaintiffs cannot recover damages because of injury inflicted upon their property by the construction of the railroad in the street. These cases do sustain that proposition, and if they were controlling they would bar recovery under the first count as well as under the second and third. It is only necessary, however, to state that the claims for damages asserted in those cases arose at a time when the constitution of Virginia did not inhibit the damaging of private property for public use without paying compensation. Prior to the adoption of the new constitution in that state in 1902 its constitution inhibited the taking of private property for public use except upon compensation being paid therefor, and the courts in those cases were applying the law as it existed uncontrolled by a provision like that contained in our constitution since 1872 providing that private property shall neither be taken nor damaged for public

use without paying just compensation. It it is quite true that originally private ownership in real estate was held upon the condition that the public could take it or damage it for public use without paying any compensation. Constitutional · provisions were inserted in most if not all of the constitutions of the American states prohibiting the taking of such private property without paying compensation, but in many of them the provision went no further, the public being allowed to inflict serious and permanent injuries upon the private property of citizens, and it was held that the same was *damnum absque injuria*. The manifest injustice arising from these holdings has now produced in at least some of the American states the introduction of a provision in their constitutions, not only providing that private property shall not be taken for public use without paying just compensation, but that it shall not be damaged for that purpose without paying such compensation. Our constitution contains such a provision as this, and the effect of it in cases like this has been repeatedly considered by this court. In the case of *Spencer* v. *R. R. Co.,* 23 W. Va., 406, Judge Green, in an elaborate opinion, discusses the effect of this constitutional provision, and concludes that the owner of private property which is directly damaged by the construction of a public work is entitled to recover such damages in an action at law. The case of *Fox* v. *R. R. Co.,* 34 W. Va. 466, was a suit to recover damages for just such an injury as is sued for in this case, and the court sustained the right to recover, holding that the owner is entitled to recover any damages necessarily resulting from the ordinary and proper use by the railroad company of the track in the street. To the same effect are the cases of *Arbenz* v. *R. R. Co.,* 33 W. Va. 1; *Watson* v. *Ry. Co.,* 49 W. Va. 528; and *Fowler* v. *Ry. Co.,* 68 W. Va. 274. These cases clearly establish the right of the plaintiffs in this case to recover, not only the damages suffered by them by reason of injury to their means of access to their property, but also any such injury as may result to it from the proper operation of the railroad in the street, and such damages will include injury to it from sparks, smoke and cinders being cast upon the house making it likely to be destroyed by fire, as well as injury to the house from being shaken and jarred by the operation of trains in such

close proximity to it. The circuit court, therefore, erred in sustaining the demurrer to the second and third counts of the plaintiffs' declaration.

On the trial of the case upon the first count of the declaration the plaintiffs introduced evidence to show that by reason of the making of the fill in the street in front of their house a part thereof was made practically uninhabitable, and that access to the property from any of the public streets was made very difficult, and that on this account the value of the property has been substantially depreciated.     Many witnesses testify along this line.     They then introduced the will of Elizabeth Carpenter, under which the plaintiffs obtained their title to the property, and it was upon construction of the devise contained in this will that the motion to direct a verdict was sustained, the holding of the circuit court being that the plaintiffs did not have such an estate in the property as would justify any recovery in their favor upon the evidence introduced showing entire damages to the real estate.     The provision of the will disposing of this property is as follows: "I give and devise to my son, Boyers Boyce, my daughters Viola Curry and Cassie Fortney, and to my grandson Danzel Hayhurst, all of the property where I now live, situate on Guffey Street in the first ward of the city of Fairmont, conveyed to me by Viola Hayhurst and husband, in the following manner and proportion, that is to say: to the said Boyers Boyce the use and control and benefit of the three basement rooms; to the said Viola Curry those two certain rooms in said building next to the property owned by R. E. Harr, and on the first floor, and the three rooms immediately over said two rooms; to said Cassie Fortney the four rooms on the first floor on the lower side of said building, the two rooms over said four rooms, and the attic; to the said Danzel Hayhurst, the two remaining rooms on the first floor at the rear of said building; they and each of them to have the use, control and benefit of said portions of said house during the period of their natural lives, respectively; and it is my desire and will that said house shall be so divided between them until, for any reason, it may become necessary to rebuild upon the lot where the same stands, in and after which event, I devise and give the lot on which said house stands to said Boyers Boyce, Viola Curry, Cassie

Fortney and Danzel Hayhurst equally, to each an undivided one-fourth interest therein, for and during their respective lives, and at the time of their respective deaths, I give and devise the same to their respective lawful heirs." The contention of the defendant is that the plaintiffs, under the above quoted provision of the will, took each a separate estate in the several parts of the house referred to and directed to be occupied by them, and then after the expiration of that estate, by the destruction of the house, or by it being made necessary to replace the same, a joint estate for their lives in the property, and at their deaths the remainder would pass to their respective heirs, and that because of this each of the plaintiffs would be entitled to recover damages only for such injury as had been inflicted upon the part of the house given to him by the will, and that these damages would have to be recovered in a separate suit by each plaintiff, that for the injury to the joint life estate succeeding these separate estates, in case it ever became necessary to replace the house, a joint suit would have to be maintained by the plaintiffs, and that any damages to the reversion, that is, permanent damages to the estate, would have to be recovered in a suit by the remaindermen. The plaintiffs insist, however, that the effect of the above quoted clause of the will was to confer upon them an absolute estate in fee simple in the property, and that they are entitled to recover entire damages for the injury inflicted. They say that the devise to them is controlled by the Rule in Shelley's Case, and is not affected by the provisions of § 11, ch. 71 of the Code abolishing the Rule in Shelley's Case in certain instances.

The view we take of this case renders it immaterial at this time to determine whether the plaintiffs are the owners of a fee simple estate in this property, or hold it in the manner contended for by the defendant, for in either event we are of opinion that the plaintiffs, under the circumstances shown here, are entitled to recover permanent and entire damages to the estate, and that the court should not have excluded their evidence and directed the verdict complained of. It will be observed from the provision of the will above quoted, if it is given literal effect, that each of the plaintiffs are devised particular rooms in the house, and that it is provided further that

when it becomes necessary to reconstruct the house then the plaintiffs shall hold the property jointly, each having a one-fourth interest therein during his lifetime, and at their deaths the same shall pass to their respective heirs in fee. The contention of the defendant is that for any injury to the present occupancy of the house plaintiffs cannot recover jointly, because they do not at this time have any joint estate in the property, but that each of them must bring a separate suit to recover damages for the injury inflicted upon the particular part of the house to which he is entitled under the will, and that then a joint suit must be instituted by all four of the plaintiffs to recover damages to the contingent life estate which may intervene between these separate estates, and the vesting of the remainder in fee, in which joint suit there could be recovered damages for the diminution of the value of this contingent life estate, and then another suit would have to be instituted by the remaindermen to recover for the permanent injury to the property. This would make necessary, if the defendants's contention is sustained, the institution and prosecution of six separate suits, in order that satisfaction might be obtained, for the infliction of a single injury to a single piece of property, and not only would it put the owners of the property to the expense and vexation of these numerous suits in order to vindicate their rights, but it would likewise put the defendant to the expense of making practically the same defense in these separate suits. Such a condition, however, might be tolerated were it not for the further fact, which clearly appears here, that it would be absolutely impossible for the owners of this property to prove any reasonably certain measure of damages as a basis for a recovery in such separate suits, and the effect of such a holding would necessarily be to deny to the owners of the property any right to recover for the injury inflicted upon it. It will be observed that the estate in possession, whatever it may be, is limited to such time as it may be necessary to reconstruct the house now located upon the lot. Manifestly it is impossible for the plaintiffs to even find a basis for a reasonable speculation as to when this may be, and any measure of damages which they would attempt to show to their separate use of the house would be so uncertain and indefinite, because of the impossibility of fixing the

period for determining their respective estates, that a recovery would not be allowed. But this is not the worst of it. When we come to the joint life estate which the plantiffs may hold in the property, depending upon whether it becomes necessary to replace the house before they die, the uncertainty is much greater. This joint life estate may never exist. Manifestly if the plaintiffs die before there is necessity for rebuilding the house, such a joint life estate will never be brought into existence, but even if a definite day could be fixed for the beginning of such an estate there is no way to determine when it may end, for it cannot be assumed that all of the plaintiffs will die at the same time, and of course if such a joint estate is brought into existence because of the necessity for reconstructing the house, and one of the plaintiffs should die, his interest under the will would pass to his heirs, and so on successively until all of them have departed this life, and their respective interests become vested in their heirs. Carrying the defendant's contention to its legitimate conclusion, this would make necessary the institution and prosecution of many more separate suits to recover damages for estates which may be created by the possible combinations which may arise in the future. It will thus be seen that it is absolutely impossible for the plaintiffs to establish any basis for a recovery of damages to their contingent joint life estate, while we can see that the injury to such estate may in fact be substantial. The rule invoked by the defendant and laid down by this court in the cases of *Jordan* v. *Benwood,* 42 W. Va. 312, and *Yeager* v. *Fairmont,* 43 W. Va. 279, may have application to a case where it is possible to measure with reasonable certainty the injury suffered by each estate in the property. In those cases the owners of the life estates, as well as the reversioners were determined. In this case it is not even known who the reversioners will be, and this cannot be determined until the death of all four of the plaintiffs, so that there is no person in being, so far as we can now determine, who could prosecute a suit for the injury to the reversion if the contention of the defendant is sustained. We must not lose sight of the fact that rules of pleading and practice are made for the convenient administration of justice, and not for the purpose of permitting one who inflicts a wrong on another to escape justice. I see no good reason why

all of the parties who are interested in real estate should not join in one suit to recover entire damages for the injury inflicted, and when the recovery is had they can apportion it among themselves in accordance with their respective interests or estates; or, in case they cannot agree on this, the court can do so for them.   This would make necessary only one suit, would save the owners the expense and vexation of prosecuting several suits, and the one who had inflicted the injury the like expense of making defense to several suits.   This is not in accord, however, with the holdings in *Jordan* v. *Benwood,* and *Yeager* v. *Fairmont,* above cited, and the matters involved here make it unnecessary for us to say that the doctrine announced in those cases was not correct under the facts there existing.   In this case, however, as we have before shown, there is only one way in which compensation can be given to the owners of this property for the injury inflicted upon it, and that is to allow a recovery of the entire damages, and then permit those having life estates to have the use of the fund thus derived during the continuance of those estates, and then appropriating the use of this fund to the benefit of the different parties as the contingencies arise creating the different interests in the property until the reversion becomes vested in the remaindermen. What we have said in this regard is based upon the assumption that the defendant's contention in regard to the ownership of this property is correct.   Of course, if the plaintiffs are, as they contend, the absolute owners of it, then the suit is correctly brought.   It is unnecessary for us, however, to determine this question, as in either event the plaintiffs are entitled to recover entire damages for the injury inflicted upon the property.   The courts will not allow a rule of pleading and practice, made only for the convenient administration of justice, to be used as a means of depriving the owners of property of the means of vindicating their property rights.

Our conclusion is, therefore, to reverse the judgment of the circuit court of Marion county, set aside the verdict of the jury, and remand the case for a new trial.

*Reversed and remanded.*