## CHARLESTON.

AMELIA KARCHER *v.* WHEELING ELECTRICAL CO.

Submitted May 29, 1923.    Decided June 12, 1923.

1.  EMINENT DOMAIN—*Electric Lines on Steel Towers in Street Held not Additional Servitude on Easement.*

    The use of the streets of a municipality by an electric light and power company furnishing light and power to the public and for private use by placing steel towers therein, as described in this case; on which is strung its transmission lines carrying high voltage electricity, authorized by proper municipal franchise, is not an additional servitude on the easement of the street for which an abutting land owner can, ipso facto, recover damages against the licensee, or the municipality. (p. 280).

2.  ELECTRICITY—*City May Prescribe any Portion of Street to be
    Used by Electric Power Company, Under Franchise, for
    Electric Transmission Lines.*

    The use of the street for that purpose is not limited to the
    centre of the street; any portion thereof may be used as the
    municipal authorities may prescribe with due regard to public
    safety.   (p. 281).

3.  SAME—*Declaration Against Electric Power Company for
    Damages Superinduced by Fear From Proximity of Wires
    Over Street, Without Charging Negligence, Held Insufficient.*

    Where such company, under proper municipal franchise,
    has erected in a street a steel tower 3½ feet square and 80
    feet high within 8 or 9 feet of the corner of the lot of an
    abutting landowner on the top of which tower and other
    towers in the distance are strung wires carrying high voltage
    of electricity, which wires parallel the lot; and the lot owner
    in a suit against the company for damages to her lot, has·
    charged in her declaration that she is damaged by impair-
    ment of ingress and egress superinduced by fear of danger
    from proximity of the wires over the street, without charging
    negligence or some ulterior motive in the construction or
    operation, but simply because they are there, a cause of ac-
    tion is not stated, and a demurrer thereto was properly
    sustained.   (p. 285).

Case Certified from Circuit Court, Marshall County.

Action by Amelia Karcher against the Wheeling Electrical
Company.   The circuit court sustained a demurrer to the
declaration, and certified its ruling to the Supreme Court of
Appeals.

*Affirmed.*

J. *Howard Holt,* for plaintiff.

J. C. *Simpson* and D. B. *Evans,* for defendant.

LIVELY, JUDGE:

The circuit court sustained a demurrer to the declaration
and on its own motion has certified its ruling to this court
for review.

Does plaintiff's declaration state a cause of action?   In her
declaration plaintiff sets out that she is the owner of a lot
of land fronting 60 feet on Eighth avenue in the city of

· Moundsville, and running back northwardly along the west side of Lockwood avenue a distance of 110 feet; which lot is valuable for residential or business purposes; that in front of and about 8 or 9 feet from the most valuable corner defendant has a steel tower 3½ feet square and 80 feet high on which are strung wires which carry heavy electric currents along the whole distance of plaintiff's lot on Lockwood avenue and within 4 or 5 feet of plaintiff's property line, rendering the occupation of her property dangerous, and rendering ingress and egress to said lot from Lockwood avenue dangerous; that on the steel tower defendant has placed a placard warning all persons to keep away from danger of high voltage; that the erection of the tower, the stringing of the wires carrying high power currents of electricity, and the danger warning so placed, have destroyed entirely the value of the property for use or sale; which property before the injury and destruction was worth $2500; and by reason of all of which plaintiff has been damaged $2500; and therefore she brings the suit.

We gather from this declaration that the steel tower 3½ feet square stands in Lockwood street near its intersection with Lockwood avenue, and within 8 or 9 feet from the corner of plaintiff's lot at the intersection of these two streets; that on the top of this tower 80 feet above the ground are strung wires carrying high voltage electricity and that said wires parallel plaintiff's property line on Lockwood avenue and within 4 or 5 feet of plaintiff's property line, but 80 feet above the lot; and this together with the danger signal on the tower has rendered the occupancy of the property and ingress and egress thereto along Lockwood avenue dangerous, totally destroying the value of the property alleged to be $2500, at which the damage is laid.

We take judicial notice that the city of Moundsville is a municipal corporation; and the presumption is that defendant's tower and electric line have been placed in Lockwood avenue by proper municipal authority for purposes which would justify the use of the street, and are lawfully there. For what purpose the electricity is used, whether for public

or private consumption as light or power in the city or else-where does not appear. The briefs intimate that it is trans-mitted for use at coal mines south of the city, and a portion used in the city. We do not have before us the question of the right of the city to burden the easement of the street with electric line. Whether the electric line is an additional burden not contemplated when the streets were dedicated, purchased or condemned, about which the decisions are in conflict, does not arise on this declaration. Whether the city or the abutting land owners have title to the fee in the streets does not appear. Speaking of telephone lines and poles erected in the streets of an in-corporated city, town or village, this court held in *Maxwell* v. *Central D. & P. Telegraph Co.*, 51 W. Va. 121; 41 S. E. 125; 8 Am. Elec. Cas. 206, that such use of the street does not constitute a burden on the fee, but that it was a burden alone upon the permanent easement of the public in the street. And in *Fox* v. *City of Hinton*, 84 W. Va. 239, we said that the easement of the public in the street embraced the reasonable use of such street for wires of telegraph, tele-phone and electric light companies and other similar ar-rangements for communication or transportation as fu-ture invention may make desirable.

For the purpose of this case, the use of the street for the erection of the steel tower and placing thereon transmission lines may be conceded to have been rightfully granted for a proper purpose, about which plaintiff cannot complain un-less it works an injury to her or her property. She says it has injured her property, totally destroyed it, placing her damage at its full value. She has the right, like every other person, to use the street in common with the general public; possibly she has the reversionary interest in the land to the centre of the street; and she has the right of free ingress and egress to and from the street over her abutting lot; and the easement of light and air. She is not complaining of damage to her right to free use of the street in common with others of the public, nor of obstruction of light or air. Her sole complaint is that the stringing of the wires in close

proximity to her property line on Lockwood avenue renders ingress and egress to her property dangerous, and renders occupancy of the property dangerous. She says the placard warns of danger and she can neither use nor sell the property, by reason of the tower, wires carrying high voltage, and the danger warning. Her ingress and egress has been destroyed not by the physical obstruction of the tower or wires but because of danger from the high voltage of electricity conveyed over the wires. This is the gravamen of the complaint. In what the danger consists, the declaration does not disclose. It is true that high voltage of electricity is a dangerous agency wherever it may be found. No allegation of unskilful or defective work in the erection of the poles, stringing of the wires or insulation of the current is charged. The fact that the current passes within 4 or 5 feet of the property line and 80 feet above the ground is the basis of the damage. If defendant has the legal right to transport its electric current over the streets, it is obvious that as long as it is confined to the street there is no injury to or taking of plaintiff's property nor interference with ingress and egress. If the current passed over the centre of the street the danger to her in passing under it would be as great as if it was on either side of the centre. Should the municipal authorities or its licensees, be restricted to the centre of the street, for the transmission of electrical energy because of increased hazard to the abutting property, or the owners, it is also obvious that a double track electric car line would be prohibited unless damages were paid to the abutting land owners on each side. The running of electric cars, always dangerous to persons and traffic using the street would be restricted to the exact centre. Transportation and travel by trucks or automobiles propelled by gasoline, steam or electricity, are dangerous as daily fatalities demonstrate, and yet they operate over the street from curb to curb, with no resultant legal damage to the abutting property owners for that reason alone. Gas mains, which often blow up, and water pipes which often burst, both causing serious damage, may be laid under the surface of the street, and yet they are not required to be confined to the street's centre, in order

to minimize danger to and allay the fears of the abutting property owners. The bare fear that these dangerous agencies of transportation or travel may become uncontrolled and cause damage to life or property, if measured in dollars would inhibit their use on the streets or public thoroughfares. The degree of fear would vary according to the timidity of each property owner, a rather unstable basis on which to predicate damages. If there be negligence in their construction or operation and damage results, the law provides a remedy. The easement of the street carries with it "the right to use the street for street cars, for wires of telephone, telegraph and electric lighting companies, and for water pipes, gas pipes, sewers, and such other similar arrangements for communication or transportation as future invention may make desirable." *Fox* v. *City of Hinton, supra.* Can the fear of danger from their uses be invoked to prevent the use of the streets for these purposes? We are committed to the proposition by *Maxwell* v. *Telegraph Co., supra,* and *Fox* v. *City of Hinton, supra,* that the use of the streets by telegraph, telephone and electric wires is not an additional servitude whether the fee in the street belongs to the municipality, or whether the city has an easement therein for travel, communication, and the transportation of persons and property having due regard for the safety and convenience of the public. The use of the streets for these purposes is not confined to the centre or any portion thereof. It is presumed that the municipality will regulate the installation and operation of these agencies so as to minimize the danger and not interfere with traffic and travel. Under the broad police power they have ample authority so to do. Many of the state courts have held that such wires, especially telephone, telegraph and electric wires, do not impose an additional burden. *Magee* v. *Overshiner,* 150 Ind. 127; *McCann* v. *Telegraph Co.,* 69 Kan. 210; *Cumberland* v. *Auritt,* 27 Ky. L. 394; *Irwin* v. *Grt. Southern Tel. Co.,* 37 La. Ann. 63; *Pierce* v. *Drew,* 136 Mass. 75; 1 Am. Elec. Cas. 571; *People* v. *Eaton,* 100 Mich. 208; *Julia Bldng. Assn.* v. *Bell Tel. Co.,* 88 Mo. 258, where it is said that when a street is

opened, the public has all the incidents attached to the use thereof necessary to its full enjoyment, and that as civilization advances public necessity demands many uses unknown and unthought of at the time of the dedication; *Carter* v. *N. W. Tel.*, 60 Minn. 539; *Hershfield* v. *Mountain Bell Tel.*, 12 Mont. 102; *Kirby* v. *Citizens,* 17 So. D. 362; *York Tel. Co.* v. *Keesey,* 5 Pa. Dist. Co. Rep. 366; *Lockhart* v. *Craig Str. Ry. Co.,* 139 Pa. St. 419 (poles and wires for street railway); *Crooke* v. *Flatbush Waterworks,* 29 Hun. 245; *Tuttle* v. *Brush Co.,* 50 N. Y. Superior Ct. 464; *Johnson* v. *Thompson-Houston Co.,* 54 Hun. 469; *Loeber* v. *Butt Cen. Elec. Co.,* 16 Mont. 1; *Havenford* v. *Hart,* 13 Pa. Ct. R. 369. There are other decisions taking the view that such use of the streets is an additional burden for which the abutting land owner may recover compensation. But, as before stated, this declaration is not based on the use of the street for the wires; but is for destruction of the right of ingress and egress to the property. Certainly if the construction and use of the wires interferes with or obstructs her right or easement of access, light or air, she would be entitled to compensation. But the bare fear that an accident may happen by the breaking of the wires, a fear which may be entertained by others of the general public of the same degree of timidity, is not such a deprivation of ingress and egress which could be measured in terms of money. We are cited by plaintiff's counsel to *Curry* v. *Buckhannon & Northern R. R. Co.,* 87 W. Va. 548, as embodying the principles which govern. Where commercial steam railroads use a street the courts have held that such use is an additional burden upon· the abutting land owner, a use not reasonably contemplated when the street was dedicated, or included in the damages if condemned, or in the purchase money if purchased, and damages are awarded to the property owner for the added burden with its attendant risks and annoyances, of noise, cinders, smoke, danger of fire, including restriction of free ingress and egress. · The allegation that the property has been destroyed is a conclusion. The facts stated on which that conclusion is based do not warrant it. The damage which may occur is speculative

and remote. In condemnation proceedings many authorities say that the possibility of towers and wires being blown down on persons, buildings, or animals is too speculative and remote to be considered in fixing damages for the taking of the easement, or condemnation of the land. 20 C. J. 790, sec. 241-g. There are other decisions to the contrary. The books are replete with decisions illustrating the principle that no person is liable for damages incidentally occasioned to another by the necessary and beneficial use of his own property or of a franchise legally granted to him. He is liable, of course, where he violates the well known maxim or of a franchise legally granted to him. He is liable of "*Sic utere* in *Panton* v. *Holland,* 17 Johns, 92, as follows: "On reviewing the cases, I am of opinion that no man is answerable in damages for the reasonable exercise of a right, when it is accompanied by a cautious regard for the rights of others, when there is no just charge of negligence or unskillfulness, and when the act is not done maliciously." Electricity in high voltage is a dangerous agency. Controlled, it is a willing, beneficent, untiring and powerful servant, furnishing soft light for the reader or driving powerful motors in the transportation of long trains of coal, and other commerce, or driving the super-dreadnaught through the storms at sea; uncontrolled, houses are consumed by it, enduring steel and concrete are shattered, and the rocks split into fragments or are ground to sand. Fortunately, the present state of electrical development, although in its infancy, has devised means of reasonably safe control, and no doubt human ingenuity will further devise safer methods and appliances. But the fact that it is dangerous does not prohibit its use or transportation over the streets of a municipality; otherwise its usefulness would be denied to the people therein. There is no allegation here that the current of electricity is handled negligently, the appliances unsafe, or not the best reasonably obtainable, or any improper or faulty construction. What fact is it on which the allegation of danger is based? Simply that the current is being transmitted within 4 or 5 feet of the property line, and 80 feet above it. What is considered as indirect, as distinguished from direct injuries, is well

stated in *Penn R. Co.* v. *Marchant,* 119 Pa. 541, construing the constitutional provision of that state providing for compensation for property "injured" or destroyed as well as taken by corporations serving the public. It was held to be such actual, positive and visible injury—the natural and necessary results of the original construction or enlargement of its works by a corporation, and of such certain character that compensation therefor may be ascertained at the time, and paid or secured in advance, as distinguished from indirect injuries which were the result of subsequent operation of the works in a lawful manner without negligence or malice. "Where the particular structure or operation is legally authorized, there is no liability for damages necessarily caused thereby; the only liability is for negligence." 20 C. J. 363, sec. 48, title, "Electricity." Somewhat pertinent is *Cumberland T. & T. Co.* v. *United Elec. Ry. Co.,* 42 Fed. 273, where it was held that in the then state of electrical development, a telephone company could not maintain an action against an electric railway company for injury sustained by the escape of electricity from its rails; and that where a person was making lawful use of his own property, or of a public franchise, in such way as to injure another, the question of his liability depended upon the fact whether he had made use of the best means then known to science. See also *Cincinnati I. P. R. Co.* v. *City & S. Tel. Co.,* 12 L. R. Anno. 534; 48 Ohio St. Rep. 390.

We conclude that defendant has the lawful right to transmit its electric energy over the streets of Moundsville and is not confined in so doing to any particular portion of the street unless contrary to its franchise from the municipality; that because it is transmitted near to plaintiff's lot does not *ipso facto* make a cause of action for damages to her property; that the towers and wires do not constitute an additional servitude on the streets to the detriment of her property for which she can be heard to complain; and that the allegations of the declaration do not state a cause of action. We answer the question certified by affirming the lower court in sustaining the demurrer.    *Affirmed.*