CARNEY *v.* MISSISSIPPI STATE HIGHWAY COMMISSION

No. 40773 June 2, 1958 103 So. 2d 413

*Wilbourn, Wilbourn & Lord, Lawrence W. Rabb,* Meridian, for appellant.

*Dunn & Singley,* Meridian, for appellee.

HALL, J.

This is an eminent domain proceeding brought by the Mississippi State Highway Commission in the County Court of Lauderdale County against Ben Carney. From the judgment of the county court Carney, who was the defendant, appealed to the circuit court and that court granted a judgment reversing the judgment of the county court and also granted a trial de novo of the case. Carney being dissatisfied with the amount of the award has appealed to this Court.

The land in question involves the construction of a cloverleaf at the intersection of U. S. Highway 45, which runs north and south, and the combined U. S. Highways 11 and 80, which run east and west, and is otherwise known as Tom Bailey Drive. The defendant owned one and one-half acres of land just southwest of the intersection. The Highway Commission had acquired most of the right-of-way which they desired in connection with the construction of the cloverleaf but found that it was in need of a small additional strip of the defendant's land which extends a considerable distance along the east side of his land but contains only .26 acres; and this is the land which the appellee condemned and appropriated.

At the time of the trial in the circuit court the entire project had been practically completed. Highway 45, just east of the defendant's property, had had a fill or embankment constructed which, according to the record and particularly the testimony of the project engineer of appellee, was somewhere between 17 and 27 feet in height, and the base of same was practically against the defendant's land. The embankment of Tom Bailey Drive which abutted the defendant's property on the north also reached a considerable height.

At the request of the Highway Commission the court granted the following instruction to the jury: "The Court instructs the jury for the petitioner that, under the law, the petitioner had the right to construct on its present right of way an interchange leg from Tom Bailey

Drive to Highway 45 without the payment of any damages to the defendant.''

This instruction is manifestly wrong and should not have geen given. It virtually amounts to a peremptory instruction and in effect tells the jury that the petitioner had the right to construct the embankment without the payment of any damages to the defendant, so long as it remained on its own right-of-way. It is undisputed in this case that prior to the construction of these embankments the appellant could have entered Tom Bailey Drive directly from his property and, in fact, the Highway Commission at one time granted him a permit to enter the same, but later, apparently when it was decided to build the cloverleaf it revoked this permit, and the appellant had to use an entrance by way of Hamilton Road which lay immediately west of his property, but at the time of the trial Hamilton Road had been closed by the City Council of Meridian at the point where it crossed Tom Bailey Drive and the only way that the appellant can get from his property into any highway is to go north on Hamilton Road to the point where it has been closed and then turn west and travel a distance of 300 feet and then turn north and go across the right-of-way so as to enter the highway. In case he should decide to go into the City of Meridian, which is north of Tom Bailey, he could follow this service road on across the highway and then travel back 300 feet to the east until he reached Hamilton Road.

In the early case of Theobold v. L., N. O. & T. Ry. Co., 65 Miss. 279, 287, 6 So. 230, this Court was dealing with a public street but it laid down the following very pertinent law, which is here applicable: ''The laying out of a public street creates two co-existent rights—one, belonging to the public, to use and improve the street for the ordinary purposes of a street—the other, to the abutting owner, to have access to and from his property over the street, and to make such use of the street as is

customary and reasonable. Both, are valuable, and the one is as inviolable as the other. It would be as unjust and unwarranted for the public to use and appropriate the street, so as to impair or destroy the rights of the abutting owner, without his consent and without compensation, as it would be for him, by a like course of conduct, to impair or destroy the rights of the public.

"So that, it appears that the abutting owner has special interests and rights in a public street, which are valuable, and indispensable to the proper and beneficial enjoyment of his property. His right to use the street as a street, is as much property as the street itself, and neither the public, nor a corporation, nor an individual, can lawfully deprive him of it, against his will, without compensation. If the street is needed for the purposes of a railroad, or for any other purpose inconsistent with the ordinary uses of a public street, the rights and interests of the abutting owner must be obtained, with his consent, or by the exercise of the right of eminent domain, as in other cases of taking private property for public use. Haynes v. Thomas, 7 Ind. 38; Tate v. O. & M. R. R. Co., Ib. 479; Crawford v. The Village of Delaware, 7 Ohio St. 460; B. & M. R. R. Co. v. Reinhackle, 15 Neb. 279; Lahr v. Met. El. R. R. Co., 104 N. Y. 268."

Later in the case of Town of Clinton v. Mattie Turner, 95 Miss. 594, 600-601, 52 So. 261, this Court was again dealing with a city street and held as follows: "The law recognizes that abutting property owners' rights in streets is a property right, and, like all other property rights, it guards and protects it. From the unreasonable hardships imposed upon citizens in this way grew the law for their protection, crystallizing in section 17 of the Constitution, and emphasized and broadened by section 3336 of the Code of 1906. * * *

"The jurisdiction given to the municipalities to close and vacate streets, or any portion thereof, is coupled with the condition that they shall *first* make due com-

pensation to abutting property owners. When they act without doing this, they act without authority, and their action is no more forceful than if done by a wholly unauthorized person or body of persons.''

It will be noted that the Court in the above case referred to Section 17 of the Constitution, which we think is specifically in point here and is as follows: ''Private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law; and whenever an attempt is made to take private property for a use alleged to be public, the question whether the contemplated use be public shall be a judicial question, and, as such, determined without regard to legislative assertion that the use is public.''

In the subsequent case of City of Jackson v. Welch, 136 Miss. 223, 236, 101 So. 361, this Court said as follows: ''The underlying principle, as we understand it, which gives the abutting owner the right to keep the street open, is based upon the theory that he has a special easement or right of user in the street, other than that enjoyed as one of the general public, in connection with access to his property; and that when you close the street and prevent egress and ingress to and from his property you specially damage him; and this can be done only by public authorities upon due compensation being paid to cover the special damages suffered by depreciation of the value of his property. Morris v. Covington County, 118 Miss. 875, 80 So. 337; City of Laurel v. Rowell, 84 Miss. 435, 36 So. 543; Clinton v. Turner, 95 Miss. 594, 52 So. 261; 13 R. C. L., Section 125; 29 C. J., section 263, p. 547.''

In the case of Smith v. State Highway Commission, 183 Miss. 741, 747, 184 So. 814, this Court specifically held that construction work done on other property, might damage the landowner in suit by making his property less valuable and less accessible to the highway,

particularly where the approach to the highway was rendered more inconvenient, and the Court said: "It will be observed that by the instruction the jury were told that they could not award appellants any damages on account of construction work done on the railroad property. As stated the evidence tended to show that such construction made appellants' property less accessible to the highway; that the approach was rendered more inconvenient. This was error. Section 17 of the Constitution prohibits both the taking and the damaging of private property for public use. It may be damaged without the taking. Parker v. State Highway Commission, 173 Miss. 213, 162 So. 162. The diminution of the value of abutting property by interference with ingress and egress to and from it is damage within the meaning of the Constitution. Curry v. Railroad Company, 87 W. Va. 548, 105 S. E. 780, 22 A. L. R. 138."

 In view of this holding we are of the opinion that the lower court was in error in granting the following instruction to the petitioner: "The Court instructs the jury for the petitioner that the defendant is not entitled to damages resulting solely from inconvenience, if any, entering and leaving his remaining property provided you believe that the public at large suffer the same inconvenience."

 We think when the Tom Bailey Drive adjacent to the appellant's property was made a non-access highway, this was the equivalent of an appropriation of the appellant's right to have an easy way of access to the main highway. As to this situation see City of Laurel v. Rowell, 84 Miss. 435, 440, 441, 36 So. 543, where this Court said: "When people build on the side of, and with reference to, a public street, they acquire an easement in its free user by them and the public and in the resultant value of such user. This is property, and cannot be taken from them or damaged by closing the street, except upon compensation first paid. The closing of the

street is a taking of the easement for the public use in the purview of our constitution. * * * All the citizens of a town have the right to have their public thorough-fares, streets, or alleys, whether acquired by dedication or user, kept open for their own use and the use of visiting strangers who come for commerce or social intercourse. They should never be closed except when plainly for the public good, and cannot then be closed except upon compensation first paid for any damage to abutting proprietors.''

Up to this point we have cited only cases which deal with city streets. The case of Morris v. Covington County, 118 Miss. 875, 882, 883, 884, 80 So. 337, dealt with the closing and abandonment of a public highway outside a municipal corporation line and the court there held the same thing which it had held with reference to city streets and said: ''The abutting landowner on a public highway has a special right of easement and user in the public road for access purposes, and this is a property right which cannot be damaged or taken from him without due compensation. The right of access is appurtenant to his land and his private property. To destroy this right is to damage his property. * * *

''We think it is a just rule that the abutting landowner on a public highway in the country has a special property right in the easement and free user of the public road for access purposes, and that when he is deprived of this property right by an abandonment of the highway by the county authorities he is entitled to special damages on account of such abandonment, on the same principle that a lot owner in a city is entitled to damages for the abandonment and closing of a street abutting on his property, as in both instances it is the taking or damaging of private property, a special right of easement and user in the road or street, for public use, for which compensation must be made. The particular value of the use and easement in the abutting highway is obvious, especially for purposes of egress, ingress, and access,

and when the landowner is deprived of this incidental benefit and advantage by the county, his property is depreciated in value on account thereof, and his private property right has been taken for public use, in that the act of the public authorities in abandoning a road is in the public interest, and presumably for the public advantage, and in that way the abandonment of the road is 'the taking or damaging of private property' of the abutting owner 'for public use'. * * *

"The special property right that the abutting landowner has in a public highway is not to be damaged or taken from him without due compensation. The enjoyment of the property and improvements made thereon are to be considered in connection with the advantages of the public highway as a convenient outlet to the land, which is a valuable inducement to its ownership and goes to make up its usefulness and value. The owner has the right to expect that the established public highway will be continued and maintained as such; it is an advantage incident to his property which is indeed a special right going with the land, and which he may expect will continue with the land, and that he will not be deprived thereof for the public use without due compensation therefor."

In the case of Mississippi State Highway Commission v. Spencer, 101 So. 2d 499, 502, not yet reported in the Miss. Reports, we cited several of the authorities hereinabove mentioned and said: "The law in this State is well settled that the right of ingress and egress to an abutting property owner is a property right and cannot be taken without compensation therefor."

In the brief for appellant numerous authorities are cited from other jurisdictions, all of which are in line with the Mississippi authorities. The trial court granted to the appellee the following instruction which we think is in direct conflict with the authorities hereinabove mentioned and constituted reversible error: "The Court

instructs the jury for the petitioner that Tom Bailey Drive is a limited access highway and that, under the law, the defendant, Carney, can have only such limited right or easement of access from his property to Tom Bailey Drive as may be prescribed by the petitioner and that in this case the defendant, Carney, had not been granted any right or easement of access from his property to Tom Bailey Drive by the petitioner which was in existence at the time of the filing of these proceedings and, therefore, under the law, you may not award to the defendant any damages which might otherwise have resulted by reason of the present construction upon Tom Bailey Drive denying to the defendant access to his property from Tom Bailey Drive.''

■■■ At the trial of this case the appellant offered in evidence several photographs of the scene in question where the cloverleaf was built. Many of these were taken before the beginning of the work and they showed the condition at the time of the taking of the land. The trial court in the early part of the trial excluded nearly all of these photographs,—in fact all but one, but near the end of the trial he reversed his position on page 288 of the record and admtted three more of the photographs, but all of the others stand excluded from the consideration of the jury. We readily realize that a record should not be unnecessarily cluttered with useless exhibits, but we think that all of the photographs which had any bearing on the value or condition of appellant's land both before and after the taking of his property, should be submitted to the jury.

■■■ The appellee prosecutes a cross appeal in this case on the sole ground that the lower court erred in reversing the judgment of the county court. The county court at the trial in that tribunal granted two instructions which are practically identical with two of those which we have hereinabove discussed and condemned, and we think that the circuit court was eminently correct

in reversing the judgment of the county court and in granting a trial de novo.

The judgment of the circuit court on the direct appeal will be reversed and the cause remanded for a new trial, but on the cross-appeal therefrom it is affirmed.

The holding in this case deals with two highways already in existence before the condemnation of land for the cloverleaf and they were not then limited access highways, and this opinion deals only with limited access highways which are made such along an old highway already in existence and consequently are not controlled by Chapter 332, Laws of 1948, Section 14, as amended by Section 11 of Chapter 6 of the Laws of the Extraordinary Session of 1949, nor by Chapter 314, Laws of 1956.

Affirmed on cross-appeal and reversed and remanded on direct appeal.

All Justices concur.